DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, Cheryl Bowman, has appealed from an order granting summary judgment to Defendant-Appellee, John E. Stott. This Court reverses and remands.
 I {¶ 2} Bowman and Stott were unmarried and lived together at a home owned by Stott. Approximately nine months prior to the incident which forms the basis of this action, Stott purchased a Rottweiler dog named Sampson. Five months later, Bowman was bitten by the dog. On or about July 8, 2001, the dog again bit Bowman, this time causing severe injury and prompting this action.
 {¶ 3} By initial and amended complaints, Bowman alleged causes of action for personal injury under both R.C. 955.28 and the common law. Stott filed motions for summary judgment as to each cause of action, and Bowman opposed. The trial court granted summary judgment to Stott on both claims. As to the statutory claim, the trial court concluded that Bowman's actions qualified her to be a harborer, and that she was therefore barred from seeking relief under the statute. As to the common law claim, the trial court found that Bowman could not recover because she harbored the dog, and she also had knowledge of the dog's propensity for violence based on the previous bite. Bowman has appealed and has assigned one error for review.
 II Assignment of Error
"The trial court erred in granting summary judgment on appellant's statutory and common law dog bite claims."
 {¶ 4} Bowman has claimed that the trial court erred in granting summary judgment in favor of Stott on both counts. More specifically, Bowman has argued that genuine issues of material fact exist as to whether Stott was (1) strictly liable under R.C. 955.28 and (2) negligent at common law with regard to injuries sustained by Bowman due to the dog bite.
 {¶ 5} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material act remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 6} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v.Cutlip (1992), 80 Ohio App.3d 487, 491. Because it is a procedural device to terminate litigation, summary judgment must be awarded with caution.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358, quoting Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 7} We first consider the trial court's award of summary judgment to Stott on the statutory claim. R.C. 955.28(B) imposes strict liability on one who owns, keeps, or harbors a dog for an injury to person or property, which is caused by the dog, unless certain exceptions apply.[1] R.C. 955.28(B) provides:
"The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property."
 {¶ 8} Thus, in order to maintain a strict liability cause of action under R.C. 955.28(B), the plaintiff must establish: (1) that the defendant is the owner, keeper, or harborer of the dog; (2) that the injury was proximately caused by the dog's actions; and (3) the monetary amount of the damages. Hirschauer v. Davis (1955), 163 Ohio St. 105, paragraph three of the syllabus; Stuper v. Young (May 15, 2002), 9th Dist. No. 20900, at 4.
 {¶ 9} In addition, several Ohio courts have concluded that a victim who owns, keeps, or harbors a dog cannot generally recover for injuries inflicted by the dog on him or her. See, e.g., Johnson v. Allonas
(1996), 116 Ohio App.3d 447, 450; Khamis v. Everson (1993),88 Ohio App.3d 220, 227; Manda v. Stratton (Apr. 30, 1999), 11th Dist. No. 98-T-0018; Myers v. Lynn (July 19, 1985), 6th Dist. No. L-85-009. TheKhamis court reasoned that "by enacting R.C. 955.28(B), the legislature intended to protect those people who are not in a position to control thedog."[2] (Emphasis sic.) Khamis, 88 Ohio App.3d at 227. At the same time, the legislature did not intend to protect those persons — the owner, keeper, or harborer of the dog — who would have "an absolute duty to control the animal." Id.
 {¶ 10} In the case at bar, the trial court found that there remained no genuine issue of material fact as to whether Bowman was a harborer of the dog, and concluded that she was a harborer of the dog. The trial court found that Bowman was therefore barred from seeking recovery under the statute, and granted summary judgment to Stott on the statutory claim.
 {¶ 11} In Ohio, the terms owner, keeper, and harborer, as used in R.C. 955.28, have been defined by case law. An owner is the person to whom the dog belongs. Garrard v. McComas (1982), 5 Ohio App.3d 179, 182. The keeper has physical charge or care of the dog. Id. Johnson v.Allonas (1996), 116 Ohio App.3d 447, 449. In determining whether a person is a harborer of the dog, the focus has been said to shift from possession and control of the dog to possession and control of the premises where the dog lives. Godsey v. Franz (Mar. 13 1992), 6th Dist. No. 91WM000008. A harborer is one who "has possession and control of the premises where the dog lives, and silently acquiesces to the dog's presence." Khamis, at 226, citing Flint v. Holbrook (1992),80 Ohio App.3d 21, 25. "`Acquiescence' is essential to `harborship' and requires some intent." Thompson v. Irwin (Oct. 27, 1997), 12th Dist. No. CA97-05-101, citing Godsey v. Franz (Mar. 13, 1992), 6th Dist. No. 91WM000008.
 {¶ 12} The determination as to whether Bowman was a harborer of the dog, depends on whether Bowman had possession and control of the premises where the dog lived and whether she silently acquiesced in the dog's presence. Id. In making this determination, the trial court may rely on evidentiary materials submitted by the parties in accordance with Civ.R. 56(E).
 {¶ 13} In support of his position, Stott relied on his affidavit, in which he asserted that both he and Bowman were "in possession and control" of the premises. He also relied on his sworn statement that Bowman lived at the premises with the dog from the day he brought the dog into the home until the dog bit her, causing the injuries which form the basis of this suit.
 {¶ 14} For her part, Bowman relied on her affidavit, in which she stated that she never took care of or interacted with the dog, and also that the dog was kept in a cage while Bowman was present because she was afraid of the animal. Bowman further attested that she repeatedly asked Stott to get rid of the dog, and that she asked the dog warden to remove the dog, but he refused because she was not the owner. Finally, Bowman stated that she told Stott of the earlier dog bite and of the dog's vicious tendencies.
 {¶ 15} The relevant inquiry is whether the evidence demonstrates a genuine issue of material fact that Bowman possessed and controlled the premises, and also whether she silently acquiesced to the Rottweiler being kept on the property. Stott has argued that because Bowman lived at the house, she was therefore a harborer of the Rottweiler. While the evidence demonstrates that Bowman lived in the same home as Stott, it also demonstrates that Stott owned the home, purchased the dog, brought the dog into the home, provided all care for the dog, and refused to get rid of the dog despite repeated requests by Bowman. The fact that both Bowman and Stott lived in the home, does not mean that Stott, as legal owner, had given up his right to possess and control it. At the same time, the fact that Stott kept the dog and refused to remove it over Bowman's strenuous objection, is at least some evidence that Stott was the one who did, in fact, control the home, and that Bowman was not in a position "to control the dog." See Khamis, 88 Ohio App.3d at 227.
 {¶ 16} Further, Bowman's failure to move out of the home does not constitute the harboring of an animal, since "the requisite mental intent is lacking." Thompson v. Irwin (Oct. 27, 1997), 12th Dist. No. CA97-05-101, quoting Bundy v. Sky Meadows Trailer Park (Oct. 23, 1989) 12th Dist. No. CA89-01-002.
 {¶ 17} Finally, the fact that Bowman repeatedly asked Stott to get rid of the dog as well as the fact that she sought the help of a dog warden to remove the dog creates a factual dispute, at least, as to whether she silently acquiesced in keeping the dog on the property.
 {¶ 18} Therefore, construing the evidence most strongly in favor of Bowman as the nonmoving party, we cannot conclude that there remain no genuine issues of material fact that Bowman was in possession and control of the premises and that she silently acquiesced to the presence of the dog. The judgment of the court of common pleas must therefore be reversed as to the statutory claim and remanded for further proceedings.
 {¶ 19} We next consider the trial court's award of summary judgment to Stott on Bowman's common law claim. Under the common law, a plaintiff suing for damages inflicted by a dog under a theory of general negligence must show: (1) the defendant owned or harbored the dog; (2) the dog was vicious; (3) the defendant knew of the dog's viciousness; and (4) the defendant was negligent in keeping the dog. Flint,80 Ohio App.3d at 25-26.
 {¶ 20} The trial judge granted summary judgment to Stott on this claim for two reasons: Bowman was a harborer of the dog, and Bowman had knowledge of the dog's propensity for viciousness. As to the first point, even if Bowman is a harborer of the dog that caused injury to her, she nevertheless retains the right to a common law cause of action against the dog's owner. Khamis, 88 Ohio App.3d 220, 227, citing Warnerv. Wolfe (1964) 176 Ohio St. 389, 392-393. Therefore, harborer status is not a proper basis upon which to deny Bowman's common law claim.
 {¶ 21} Second, Bowman has argued that the question of whether she assumed the risk of harm is an issue of fact that is properly considered by the jury and was not a proper ground for granting summary judgment in this case.
 {¶ 22} Stott asserted assumption of the risk as an affirmative defense and the trial court appears to have relied upon that defense as a basis for granting summary judgment to him.[3] Whether Stott and/or the trial court intended to refer to primary assumption of the risk[4] or secondary assumption of the risk,[5] factual questions remain as to whether Bowman consented or acquiesced to the presence of the dog in the home that are properly left to a jury.
 {¶ 23} As set forth above, Bowman presented evidence to the trial court which would support a conclusion that she did not consent or acquiesce to the presence of the dog. Such evidence must be viewed most strongly in favor of Bowman and create genuine issues of material fact. Because genuine issues of material fact remain as to the defense of assumption of the risk, the trial court erred in granting summary judgment to Stott on the common law claim. The judgment must be reversed as to this claim and remanded for further proceedings.
 III {¶ 24} Bowman's assignment of error is well taken. The judgment of the trial court is reversed and the cause is remanded for further proceedings.
Judgment reversed, and remanded.
[1] There is no evidence in the record that the exceptions contained in R.C. 955.28(B) apply in the present case.
[2] The dissent suggests that the issue is not who has control of the dog, but rather who controls the premises. While case law has defined a "harborer" as one who controls the premises, the rationale of Khamis in not permitting the harborer of a dog to seek the benefits of the statute is that the statute was enacted to protect those "who are not in a position to control the dog." (Emphasis added.) Khamis,88 Ohio App.3d at 227.
[3] In her judgment entry, the trial judge found that Bowman could not recover because she "harbored the dog and had knowledge of its propensity for viciousness based on the previous bite."
[4] Primary assumption of the risk is the doctrine that a defendant has no duty to protect against certain risks that are so inherent in an activity that those risks cannot be eliminated. See, e.g., Anderson v.Ceccardi (1983), 6 Ohio St.3d 110, 114. It is based on the fiction that the plaintiff has "tacitly consented" to the risk. Collier v. NorthlandSwim Club (1987), 35 Ohio App.3d 35, 37. This type of assumption of the risk is typified by the baseball cases where a spectator is hit by a baseball. While this defense may be found to exist as a matter of law in a proper case, in many others, including the case at bar, there are "attendant circumstances" that raise questions of fact as to whether the plaintiff may be found to have assumed the risk. See Gallagher v.Cleveland Browns (1996), 74 Ohio St.3d 427, 432.
[5] Secondary, or implied, assumption of the risk has been defined as a plaintiff's consent to or acquiescence in an appreciated, known or obvious risk to the plaintiff's safety. Wever v. Hicks (1967), 11 Ohio St.2d 230, paragraph one of the syllabus. Generally, this form of assumption of the risk involves questions of fact which are properly reserved for the jury. Id.