JOURNAL ENTRY AND OPINION
{¶ 1} Annie Buettner appeals from a jury verdict, following a trial before Judge Kenneth R. Callahan, that found in favor of Wayne Beasley on her claim for damages arising out of dog bite injuries. She claims that when a dog causes injury, Ohio imposes strict liability upon its owner and it was error to deny her motion for a directed verdict, that the verdict was against the manifest weight of the evidence, and that the judge failed to give the proper jury instructions. We affirm.
 {¶ 2} From the record we glean the following: Ms. Buettner and Beasley lived together for over six years at 22401 Ivan Avenue in Euclid and, although Beasley was the sole owner of the home and paid all utilities and expenses, she had a key to the residence, could come and go as she pleased, received all her mail there, and considered it her permanent residence. She did not pay rent to Beasley, and was reimbursed for household utility bills.
 {¶ 3} In March 1999, she purchased two basset hounds as a gift for Beasley that he named Sniffer and Barney. The dogs lived with the couple for over two years with Beasley providing their primary care. In his absence, Ms. Buettner cared for, fed, walked the dogs, and took them to the veterinarian.
 {¶ 4} In February 2002, while Beasley was in the kitchen with his son, she entered their bedroom, found Sniffer lying on the bed, and bent down to kiss him. The dog attacked her, biting completely through her upper lip and puncturing her gums. The injuries required twenty-eight stitches inside and outside her mouth. She currently has no feeling in her lips, and her mouth and face are scarred and disfigured.
 {¶ 5} Beasley gave Sniffer away and, several months later, the couple split up, and Ms. Buettner moved and took Barney with her. She then brought suit against Beasley alleging strict liability and negligence. Beasley answered with a general denial and, among affirmative defenses, alleged contributory negligence, assumption of the risk, and that Ms. Buettner was a harborer or keeper of the animal.
 {¶ 6} Both parties moved for partial summary judgment, however, each was denied. During the trial, each party moved for directed verdicts, which were also denied. Over objection, the judge rejected Ms. Buettner's jury instructions. When she asked that an interrogatory be submitted addressing whether she was a "harborer or keeper" of the dog, her request was denied because the judge held she had not prepared and submitted it in conformity with local rules. No other objections were made to the instructions.
 {¶ 7} Ms. Buettner's assignments of error are set forth in the Appendix to this opinion.
 DIRECTED VERDICT {¶ 8} Ms. Buettner claims the judge should have granted her motion for a directed verdict on the issue of strict liability under R.C. 955.27 because the evidence proved that she did not own the dog, the house was only her temporary residence, she lacked control of the house, and Beasley's presence at the time of the incident negated any finding that she was a keeper or harborer.
 {¶ 9} Before we address this argument, we first evaluate Beasley's assertion that it was waived for purposes of appeal by Ms. Buettner's failure to preserve her motion for a directed verdict on the record. A review of the record's partial transcript refutes this contention.
 {¶ 10} Directed verdicts are governed by Civ.R. 50, and we review the grant or denial of a motion for directed verdict de novo.[1] As the Ohio Supreme Court held in determining whether to direct a verdict, the judge does not engage in a weighing of the evidence, nor does he evaluate the credibility of witnesses.[2] Rather, the judge is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?[3]
 {¶ 11} In construing the evidence most strongly in favor of the nonmoving party, the judge must give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence.[4] In determining whether to direct a verdict, the judge does not engage in a weighing of the evidence, nor does he evaluate the credibility of witnesses.[5] Rather, the judge is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?[6] When the record contains substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions, he must deny the motion.[7]
 {¶ 12} Dog bites are governed by R.C. 955.28(B) which states in pertinent part:
"The owner, keeper, or harborer of a dog is liable in damagesfor any injury, death, or loss to person or property that iscaused by the dog, unless the injury, death, or loss was causedto the person or property of an individual who, at the time, wascommitting or attempting to commit a trespass or other criminaloffense on the property of the owner, keeper, or harborer, or wascommitting or attempting to commit a criminal offense against anyperson, or was teasing, tormenting, or abusing the dog on theowner's, keeper's, or harborer's property."
 {¶ 13} In order to maintain a strict liability action under R.C. 955.28(B), Buettner must establish: (1) that the defendant is the owner, keeper, or harborer of the dog; (2) that the injury was proximately caused by the dog's actions; and (3) the monetary amount of the damages.[8] In the past, courts held that this section of the revised code imposes strict liability on the dog owner unless one of the exceptions enumerated in the statute applies.[9] However, many Ohio courts have since expanded the breadth of the exceptions and held that a victim who is an owner, keeper, or harborer of the offending dog cannot generally recover for injuries inflicted by it.[10] Ms. Buettner submits that she neither owned, kept, nor harbored the dog, and that at all times Sniffer was under the sole control of Beasley.
 {¶ 14} The terms "owner," "harborer" and "keeper" are not statutorily defined, but rather we refer to case law for their definitions. An "owner" is the person to whom the dog belongs.[11] A "keeper" is the person who has physical care or charge of the dog.[12] And finally, a "harborer" is one who, "has possession and control of the premises where the dog lives, and silently acquiesces to the dog's presence."[13]
However, it is clear that there is no ironclad definition of the term "keeper." Many courts have used the elements of physical control, care and custody of the animal to determine whether someone meets the requirements of a keeper, but each case is distinguishable on its facts and each case must be considered on its own merits.[14] This is the province of the jury, and the judge properly reserved this determination for their review.
 {¶ 15} The second assignment of error lacks merit.
 II. MANIFEST WEIGHT {¶ 16} Ms. Buettner claims that the jury's verdict was against the manifest weight of the evidence because Beasley admitted he owned the dog and was responsible for it, denied she was a joint owner,
 {¶ 17} and nothing contradicted her testimony that she was not a keeper or harborer of the dog, and that her temporary residence with Beasley negated any finding that she was a keeper or harborer.
 {¶ 18} In evaluating a challenge to the verdict based on manifest weight of the evidence presented at trial, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misinterpretation or misapplication of the evidence by a jury which has "lost its way."[15] This power is subject to strict and narrow constraints.
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.'" * * *
 "The court, reviewing the entire record, weighs the evidenceand all reasonable inferences, considers the credibility ofwitnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction."[16]
 {¶ 19} An owner, keeper, or harborer cannot be held liable to another owner, keeper, or harborer as under R.C. 955.28(B), and although both parties testified that Beasley was the sole owner of the house, was solely responsible for all maintenance and bills, and that he was the sole owner of both dogs, it also reflects that, although Ms. Buettner did not "own" the dogs, she had voluntary control of the animals during the two plus years that the dogs lived with her. She fed them, walked them, and cared for them on a daily basis. She took them to the veterinarian on numerous occasions where she listed herself as the owner.
 {¶ 20} There is no indication that she wanted Sniffer removed or that she feared him. On the contrary, the record shows that before the attack, she was bending down to kiss a dog that frequently slept with them. Although Ms. Buettner testified that she purchased the dogs as a gift, that she did not own the home, and that she was reimbursed for her care of the dogs, this evidence is insufficient to prove she could not be a harborer or keeper of them.
 {¶ 21} Buettner cites Montgomery v. Zalud[17] in support, but it is distinguishable not only because it involved a reversal on a summary judgment motion, but it involved a tenant occupying a house for a defined two-month period of time and where the victim had been specifically advised to stay away from the dog.
 {¶ 22} As recognized in Khamis, supra, the legislature, in enacting R.C. 955.28, did not intend to protect an owner, keeper, or harborer of a dog who, by the language of the statute, has an absolute duty to control the animal.[18] We cannot say that the jury lost its way in finding against Ms. Buettner. This first assignment of error lacks merit.
 PROPOSED JURY INSTRUCTIONS {¶ 23} Ms. Buettner asserts the judge erroneously instructed the jury on the definitions of a "keeper" and of a "harborer." She claims the jury should have been initially instructed that a keeper's duties end when an owner is present and, secondly, that she was not a harborer because she was Beasley's guest.
 {¶ 24} The proper standard of review for an appellate court is whether a refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case.[19] A judge has discretion as to the language of the instructions to the jury and is not bound by the requested language of counsel.[20] The court ordinarily should give a requested jury instruction if it is a correct statement of law, which is applicable to the facts in the case, and reasonable minds might reach the conclusion sought by the specific instruction.[21]
 {¶ 25} It is incumbent upon a judge to provide the jury a plain, distinct and unambiguous statement of the law applicable to the evidence presented by the parties.[22] He can be found to have committed reversible error only where it can be determined the instructions given misled the jury.[23] The Ohio Supreme Court provided this guidance in Murphy v.Carrollton Mfg. Co.,[24]
 "It is well established that the trial court will not instructthe jury where there is no evidence to support an issue. However,the corollary of this maxim is also true. Ordinarily, requestedinstructions should be given if they are correct statements ofthe law applicable to the facts in the case and reasonable mindsmight reach the conclusion sought by the instructions."
 {¶ 26} The judge gave the following instruction to the jury:
"A keeper of a dog is a person who has the duty to manage,care or control the dog temporarily or otherwise, even though heor she does not own it."
 {¶ 27} Ms. Buettner contends that the judge should have given an instruction that "when an owner of a dog is present, the keeper's duties end." We disagree.
 {¶ 28} Buettner relies on Khamis, supra, where the court noted the distinction in Bevin, supra, that the owner waspresent at the time the victim was attacked and, therefore, the victim was not a keeper of the dog within the meaning of the statute.
"In such a case, it can be fairly determined that when theowner is actually present, the "keeper's" duties have endedsince the owner has resumed physical control of thedog."[25]
 {¶ 29} Although Khamis may be classified as persuasive authority, and while certain portions of the decision have been adopted by this court, we have yet to adopt the holding that a keeper's duties end when an owner is present. As neither this district, nor the Ohio Supreme Court has adopted this specific holding, the judge did not err in refusing to instruct the jury that a keeper's duties end when the owner is present.
 {¶ 30} Ms. Buettner also asserts error in instructing the jury on the term "harborer." In the judge's instruction to the jury, he stated:
"The harborer of a dog is a person who has possession orcontrol of the property where the dog lives."
 {¶ 31} Buettner has not offered any alternative instruction, but has rather asserted blankly that no instruction should have been given because she did not own the home, did not pay rent or any household expenses, and she required Beasley's permission in order to make changes to the home. These assertions of fact do not make the jury instruction a misstatement of the law, but rather leave the jury with the question of whether Ms. Buettner did possess or control the premises. As this question was within the province of the jury, the instruction as to "harborer" did not mislead the jury to such an extent as to cause reversible error.
 {¶ 32} This third assignment of error lacks merit.
 {¶ 33} The judgment is affirmed.
Judgment affirmed.
 Calabrese Jr., J., concurs.
[1] Steppe v. KMart Stores (1999), 136 Ohio App.3d 454,737 N.E.2d 58.
[2] Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,67-68, 430 N.E.2d 935, 937.
[3] Malone v. Courtyard by Marriott L.P., 74 Ohio St.3d 440,445, 1996-Ohio-311, 659 N.E.2d 1242, 1247.
[4] Broz v. Winland, 68 Ohio St.3d 521, 526, 1994-Ohio-529,629 N.E.2d 395, 399.
[5] Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,67-68, 430 N.E.2d 935, 937.
[6] Malone v. Courtyard by Marriott Ltd. Partnership,74 Ohio St.3d 440, 445, 1996-Ohio-311, 659 N.E.2d 1242; Ruta, supra at 68-69, 938.
[7] Ramage v. Cent. Ohio Emergency Service, Inc.,64 Ohio St.3d 97, 1992-Ohio-109, 592 N.E.2d 828.
[8] Hirshauer v. Davis (1955), 163 Ohio St. 105,126 N.E.2d 337, paragraph three of the syllabus.
[9] Montgomery v. Zalud (August 20, 1998), Cuyahoga App. No. 73021, citing Dragonette v. Brandes (1939), 135 Ohio St. 223,20 N.E.2d 367.
[10] Khamis v. Everson (1993), 88 Ohio App.3d 220, 227,623 N.E.2d 683; Bowman v. Scott, Summit County App. No. 21568, 2003-Ohio-7182.
[11] Garrard v. McComas (1982), 5 Ohio App.3d 179, 182,450 N.E.2d 730.
[12] Id.
[13] Khamis at 226, citing Flint v. Holbrook (1992),80 Ohio App.3d 21, 25, 608 N.E.2d 809.
[14] McComas, Holbrook, and Khamis supra; Johnson v.Allonas (1996), 116 Ohio App.3d 447, 449, 688 N.E.2d 549;Manda v. Stratton, (Apr. 4, 1999), Trumbull App. No. 98-T-0018.
[15] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[16] Id. at 387.
[17] (Aug. 20, 1998), Cuyahoga App. No. 73021.
[18] Khamis, supra at 227.
[19] State v. Wolons (1989), 44 Ohio St.3d 64, 68,541 N.E.2d 443.
[20] Jenkins v. Clark (1982), 7 Ohio App.3d 93, 100, 7 OBR 124, 454 N.E.2d 541, paragraph five of the syllabus.
[21] Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591, 575 N.E.2d 828, citing Markus Palmer, Trial Handbook for Ohio Lawyers (3 Ed. 1991) 860, Section 36:2.
[22] Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12,482 N.E.2d 583.
[23] Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93,652 N.E.2d 671.
[24] (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828.
[25] Khamis, supra, at 226.
 COLLEEN CONWAY COONEY, J., concurs. (see separate concurringopinion).