DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court partial summary judgment in favor of Jerry Hughes, Sr., defendant below and appellee herein, on the claims brought against him by Cyrus Hill, a minor by and through his parents and next friends, Joshua Hill and Brandy Hill, plaintiffs below and appellants herein. *Page 2 
 {¶ 2} Appellants assigns the following error for review:
 "BECAUSE ON THE UNIQUE FACT PATTERN OF THIS CASE THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER JERRY HUGHES, SR., WAS A KEEPER OR HARBORER OF A VICIOUS DOG, THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO JERRY HUGHES, SR."
 {¶ 3} Jerry Hughes, Sr. (Hughes Sr.) owns three properties on the corner of Allen and North High Streets in Chillicothe. He lives in a home on one property, operates a business (Jerry's Tires) on another, and, in 2005, rented a home on the third to his son, Jerry Hughes, Jr. (Hughes Jr.) on an oral month-to-month tenancy. In the spring of 2005 Hughes Jr. and appellant, Joshua Hill, the nephew of Hughes, Sr. and father of Cyrus Hill, both worked for Hughes, Sr. at Jerry's Tires.[1]
 {¶ 4} On the evening of April 14, 2005, Joshua Hill visited his cousin's home (Hughes, Jr.) after work to play with model airplanes. Eventually, the men's wives joined them along with Hill's son, Cyrus. The wives left the residence to purchase hamburgers and when they returned, Pete (a lab and rottweiler mix owned by Hughes, Jr.) jumped up and took a hamburger from Cyrus.
This prompted Hughes, Jr. to put Pete inside the house. Shortly thereafter, Cyrus opened the front door of the house and Pete jumped out. Pete then mauled Cyrus and caused considerable *Page 3 
injury. Cyrus was life-flighted to Columbus and he spent several days at Children's Hospital.
 {¶ 5} Appellants commenced the instant action and alleged that Hughes, Sr. and Hughes, Jr. are liable for Cyrus' injuries, as well as loss of consortium, under theories of common law negligence and the dog-bite statute (R.C. 955.28). Appellants requested unspecified compensatory damages exceeding $25,000 and punitive damages.
 {¶ 6} Hughes, Sr. and Hughes, Jr. denied liability and counterclaimed. They alleged that the Hill's were negligent for failing to supervise Cyrus. They asked for indemnity from the Hills for any sums they might be required to pay for Cyrus's injuries. The Hills denied liability. Hughes, Sr. also filed a cross-claim against his son for indemnity.[2]
 {¶ 7} On June 12, 2006, Hughes, Sr. requested summary judgment. In particular, Hughes, Sr. argued that he is not the owner, keeper or harborer of the dog and, thus, could not be liable. Appellants did not contest the fact that Hughes, Sr. does not own the dog, but argued that Hughes Sr. had sufficient control over the animal, or the premises in which it is kept, to be deemed its keeper or harborer. *Page 4 
 {¶ 8} The trial court concluded that because the bite occurred at the home of Hughes, Jr., and because Hughes Jr. rented that home from his father, Hughes, Sr. had no control over either the dog or the property. Consequently, the trial court determined that Hughes, Sr. could not be liable for Cyrus' injuries. Thus, the court awarded partial summary judgment in favor of Hughes, Sr. and made an express finding of "no just reason for delay."[3] This appeal followed.
 {¶ 9} Appellants assert in their assignment of error that in light of the unique circumstances in this case, the trial court erred by concluding that no genuine issues of material fact exist with respect to the liability of Hughes, Sr. For the following reasons, we agree with appellants.
 {¶ 10} Appellate courts review summary judgments de novo.Broadnax v. Greene Credit Service (1997), 118 Ohio App.3d 881, 887,694 N.E.2d 167; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41,654 N.E.2d 1327; Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107, 614 N.E.2d 765. In other words, appellate courts afford no deference whatsoever to trial court decisions, Hicks v. Leffler (1997),119 Ohio App.3d 424, 427, 695 N.E.2d 777; Dillon v. Med. Ctr. Hosp.
(1993), 98 Ohio App.3d 510, *Page 5 
514-515, 648 N.E.2d 1375; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-412, 599 N.E.2d 786, and conduct an independent review to determine if summary judgment is appropriate. Woods v. Dutta (1997),119 Ohio App.3d 228, 233-234, 695 N.E.2d 18; Phillips v. Rayburn (1996),113 Ohio App.3d 374, 377, 680 N.E.2d 1279; McGee v. Goodyear Atomic Corp. (1995),103 Ohio App.3d 236, 241, 659 N.E.2d 317.
 {¶ 11} Summary judgment under Civ.R. 56(C) is appropriate when a movant can show that (1) no genuine issues of material fact exist, (2) he is entitled to judgment as a matter of law and (3) after the evidence is construed most strongly in favor of the non-movant, reasonable minds can come to one conclusion and that conclusion is adverse to the non-moving party. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370, 696 N.E.2d 201; Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385, 667 N.E.2d 1197; Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. The moving party bears the initial burden to show no genuine issue of material facts exist and that he is entitled to judgment as a matter of law. Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164; Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798. If that burden is met, the onus shifts to the non-moving party to provide rebuttal evidentiary materials. See Trout v. Parker *Page 6 
(1991), 72 Ohio App.3d 720, 723, 595 N.E.2d 1015; Campco Distributors,Inc. v. Fries (1987), 42 Ohio App.3d 200, 201, 537 N.E.2d 661;Whiteleather v. Yosowitz (1983), 10 Ohio App.3d 272, 275,461 N.E.2d 1331. With these principles in mind, we turn our attention to the case at bar.
 {¶ 12} Dog-bite lawsuits may be brought under either R.C. 995.28 or under common law negligence principals. Manda v. Stratton (Apr. 30, 1999), Trumbull App. No. 98-T-0018. R.C. 955.28(B) provides in pertinent part:
 "The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property." (Emphasis added.)
 {¶ 13} Similarly, a plaintiff suing for damages inflicted by a dog under general negligence theory must show: (1) the defendant owned or harbored the dog; (2) the dog was vicious; (3) the defendant knew the dog was vicious; and (4) the defendant was negligent in keeping the dog.Flint v. Holbrook (1992), 80 Ohio App.3d 21, 25-26, 608 N.E.2d 809;Bowman v. Scott, Summit App. No. 21568, 2003-Ohio-7182, at ¶ 19;Rothenbusch-Rhodes v. Mason, Franklin App. No. 02AP-1028, 2003-Ohio-4698, at ¶ 38.
 {¶ 14} Here, Hughes Sr.'s summary judgment motion is premised on the argument that he is not the owner, keeper or harborer of *Page 7 
the dog. The evidence is uncontroverted that Hughes, Jr. owns Pete, thus, Hughes, Sr.'s liability must be based on him being Pete's "keeper" or "harborer."
 {¶ 15} For purposes of R.C. 955.28, a "keeper" is someone who has "physical control" over a dog. Flint, supra at 25; Webb v. Prout, Richland App. No. 2005CA124, 2006-Ohio-4792, at ¶ 22; Marin v.Frick, Geauga App. No. 2003-G-2531, 2004-Ohio-5642, at ¶ 37. Hill's uncontroverted testimony is that Hughes, Sr. was not present when Pete mauled Cyrus. The incident happened at Hughes, Jr.'s home and Hughes, Jr. was present and in control of the dog. Although some testimony appears to assert that Hughes, Sr. may have had control over Pete on other occasions Hughes, Sr. did not have control over Pete when he attacked Cyrus.
 {¶ 16} In some situations, someone other than an owner can be deemed a "keeper" under various circumstances. That status ends, however, when the owner is present and can exercise control over the dog. Khamis v.Everson (1993), 88 Ohio App.3d 220, 226, 623 N.E.2d 683. This point is intuitively logical. If Hughes, Jr. was present and in control of the dog, then Hughes, Sr. could not exercise rights over the dog superior to that of its owner. In this respect, we fully agree with the trial court's conclusion that Hughes, Sr. carried his initial summary judgment burden to establish that he was not Pete's "keeper" and that appellants failed to adduce sufficient rebuttal evidence. *Page 8 
 {¶ 17} The final issue is whether Hughes, Sr. could be deemed a "harborer" of the dog. A "harborer" is someone who has possession and control of the premises where the dog lives and silently acquiesces to the dog's presence. Bowman, supra at ¶ 11; Khamis, supra at 226;Thompson v. Irvin (1997), Butler App. No. CA97-05-101. The hallmark of control is the ability to advent or to exclude others from the property.Flint v. Holbrook (1992), 80 Ohio App.3d 21.
 {¶ 18} Generally speaking, a landlord will not be held responsible for injury caused by a tenant's dog so long as the tenant is in exclusive possession and control of the premises. Absent a contrary agreement, a lease agreement transfers both the possession and the control of the premises to the tenant. Burrell v. Iwenofu, Cuyahoga App. No. 81230, 2003-Ohio-1158; Hilty v. Topaz, Franklin App. No. 04AP-13, 2004-Ohio 4859. See Parker v. Sutton (1991), 72 Ohio App.3d 296, 299,594 N.E.2d 659; Hurst v. Manalo (Jul. 29, 1999), Cuyahoga App. No. 74270. Here, Hughes, Sr. testified that his son leased the premises where the attack occurred. This is sufficient to carry his initial summary judgment burden. Typically, landlords do not have sufficient possession over leased premises to control what happens with a tenant's dog. In this case, however, appellants point to facts that may differ from a typical landlord and tenant relationship.
 {¶ 19} In the case at bar, the landlord (Hughes, Sr.) and tenant (Hughes, Jr.) are father and son and live on contiguous *Page 9 
properties both owned by Hughes, Sr. No written lease spells out the rights and responsibilities of each party. The tenant (Hughes, Jr.) works for his father on the premises where he lives. These factors arguably raise questions as to whether Hughes, Sr. may have had more possession and control over the rental property than a typical landlord. These factors do not, however, necessarily mean that Hughes Sr. had sufficient possession and control of the property to be deemed a harborer of the dog. More important, however, is the Hughes, Sr. deposition testimony that raises questions about the degree of possession and control that he exercised over the premises. Hughes, Sr. testified as follows regarding his relationship with his son and his relationship to leased premises:
 "[Q] You would agree that as the Landlord you could have said to him, I don't want any dogs on this place?
 [A] Yes, I suppose I could have.
 [Q] And as your son and your employee, you could have told him to get rid of Pete; is that correct?
 [A] Yes.
 [Q] You had that right to control that, you agree with that?
 [A] I had the right to tell him he could not have a pet or could have a pet. * * *
 * * [Q] Under what circumstances as Jerry's Landlord and his father would you have told him to get rid of the dog?
 [A] In the case where he got vicious and attacked somebody without being provoked, then I would have insisted.
 [Q] How many times would you have put up with him biting somebody on an unprovoked basis? *Page 10 
 [A] Only once, certainly. If I thought the dog posed a threat to somebody, then I would certainly insist my son not have him there."
 {¶ 20} At this juncture, we need not be concerned whether Pete is vicious, or whether Hughes, Sr. knew or should have known that he is vicious. The important feature of this exchange is that Hughes, Sr. acknowledged that he possessed the authority or "right" to make his son "get rid of" Pete. As long as Hughes, Sr. retained that degree of possession and control over the premises, a genuine issue of material fact remains whether he "harbored" Pete for purposes of R.C. 955.28 and the common law negligence principles.[4]
 {¶ 21} For these reasons, we hereby sustain appellant's first assignment of error, reverse the trial court's partial summary judgment and remand the matter for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and cause remanded for further proceedings consistent with this opinion. Appellants shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
McFarland, P.J.: Concurs in Judgment Opinion Kline, J.: Dissents with Dissenting Opinion
[1] Hughes Sr. testified during his deposition that he rented the property to his son for three hundred dollars per month through seventy-five dollar weekly paycheck deductions.
[2] Initially, the same counsel represented Hughes, Sr. and Hughes, Jr. That counsel withdrew from representing Hughes, Jr. prior to filing Hughes, Sr.'s cross-claim against his son. It does not appear from the record that Hughes, Jr. retained new counsel to represent him.
[3] A Civ.R. 54(B) finding of "no just reason for delay" should be made only when it serves the interests of sound judicial economy. SeeWisintainer v. Elcen Power Strut Co. (1993), 67 Ohio St.3d 352, 355,617 N.E.2d 1136. A trial court's Civ.R. 54(B) finding is entitled to deference on review, but is subject to reversal when judicial economy is not served. Id. atparagraph two of the syllabus.
[4] Our ruling should not be misconstrued to suggest that we accept as a final factual resolution that Hughes, Sr. actually" harbored" the animal or that the issue cannot be contested through a future summary judgment moti on. We simply hold that the record, as it currently exists, does not show the absen ce of a genuine factual issue on this point. After remand, we assume that the parties will further explore the Hughes, Sr. deposition testimony in order to resolve the issue.