[Cite as *Krzywicki v. Galletti*, 2015-Ohio-312.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 101328

## TIFFANY KRZYWICKI

PLAINTIFF-APPELLANT

vs.

## PAUL GALLETTI, JR.

DEFENDANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-793844

BEFORE: Celebrezze, A.J., Keough, J., and Stewart, J.

RELEASED AND JOURNALIZED: January 29, 2015

**ATTORNEYS FOR APPELLANT**

Daniel J. Ryan
Timothy Ryan
Ryan, L.L.P.
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**
**DIVERSIFIED BUILDING MAINTENANCE**

Kenneth A. Calderone
Emily R. Yoder
John R. Chlysta
Hanna, Campbell & Powell, L.L.P.
3737 Embassy Parkway
Suite 100
Akron, Ohio   44333

FRANK D. CELEBREZZE, JR., A.J.:

{¶1} Plaintiff-appellant Tiffany Krzywicki appeals from a jury verdict that found in favor of defendant Diversified Building Maintenance, L.L.C., (DBM) on her claim for damages arising out of dog bite injuries. After a careful review of the record and relevant case law, we affirm the jury verdict.

## I. Procedural History

{¶2} Appellant commenced this action on October 19, 2012, against Paul Galletti, Jr. ("Galletti"), the owner of the dog, Riggs. On April 3, 2013, appellant filed her first amended complaint adding defendant DBM and alleging that it was strictly liable under R.C. 955.28(B) for the injuries she suffered as a result of the dog bites.

{¶3} On February 4, 2014, a jury trial commenced with DBM as the sole defendant.[1] The following facts were adduced at trial.

{¶4} In the late evening on April 24, 2010, appellant visited Galletti at his home, which he also used to run his business, DBM. The two were talking near the outside doorway when Galletti's Rottweiler, Riggs, suddenly attacked appellant, causing serious injuries to her leg, back, and face.

{¶5} At trial, Galletti testified that he was the sole owner of DBM and purchased Riggs in March 2010 in order to protect his property. He testified that when people came to his home, he put Riggs in a cage. Appellant testified that prior to purchasing Riggs, Galletti previously owned two other Rottweilers, Roddy and Stormy, who had passed away.

---

[1] By entry dated March 27, 2014, the claims against Galletti were dismissed with prejudice per agreement between the parties prior to trial.

{¶6} Galletti testified that he and appellant were involved in a romantic relationship and that she was frequently at his home. Galletti further testified that appellant occasionally performed bookkeeping work on behalf of DBM.

{¶7} Appellant testified that she and Galletti first began dating in November 2005, and shared an on-and-off-again relationship for the next five years. She testified that she stayed at Galletti's home "quite often" and was close to Galletti's previous dog, Roddy, who passed away in March 2010. She stated she was aware that Galletti rescued Riggs following Roddy's death, but insisted that she had only seen Riggs approximately three or four times and did not have much interaction with the dog prior to her attack. Appellant testified that her choice not to immediately interact with Riggs was a conscious decision to provide Galletti the time to exert himself as the dog's master. However, appellant admitted that she was involved in the process of acquiring Riggs from a rescue shelter and that she fed the dog on several occasions while he was locked in his cage.

{¶8} Tamara Nelson testified that she is friends with appellant and visited Galletti's home with her on approximately seven to eight occasions within the 30 days prior to the attack, i.e. the time when Riggs was the only dog in the household. Nelson testified that she observed appellant interact and "befriend" Galletti's dog during the 30 days prior to the attack. When questioned by defense counsel, Nelson agreed that appellant took care of the dog more than Galletti during those 30 days prior to the attack.

{¶9} Nelson was later called as a rebuttal witness by appellant. Nelson attempted to clarify her cross-examination testimony by stating that she only witnessed appellant caring for Galletti's previous dog "Roddy." Nelson stated that she had no knowledge of, and did not observe, any relationship between appellant and Riggs. Nelson attributed any confusion she

may have had during her cross-examination to the lapse in time between the events at issue and trial.

{¶10} After closing arguments, the trial court gave jury instructions that included an instruction that appellant was not entitled to judgment if the jury determined she was a keeper or harborer of Riggs. The court further provided the jury with interrogatories, including Interrogatory (D), which asked if appellant was a keeper of Riggs, and Interrogatory (E), which asked if appellant was a harborer of Riggs.

{¶11} At the conclusion of trial, the jury returned a verdict in favor of DBM. The jury found that although DBM was a "harborer" of the dog under R.C. 955.28(B), appellant was barred from recovery because she was a "keeper of the dog in that she had physical care or charge of dog, temporary or otherwise, at the time of the incident."

{¶12} Appellant filed a motion for a new trial on February 28, 2014. On April 21, 2014, the trial court denied her motion.

{¶13} Appellant brings this timely appeal, raising seven assignments of error for review.

## II. Law and Analysis

### A. Affirmative Defense

{¶14} In her first assignment of error, appellant argues that the trial court committed reversible error when it submitted to the jury an affirmative defense that was not raised until after the close of evidence. Appellant contends that it was improper for the jury to consider whether she was an owner, keeper, or harborer of Riggs. We disagree.

{¶15} Dog bites are governed by R.C. 955.28. The statute specifically lists its own affirmative defenses, including those injured while trespassing, committing a criminal offense, or teasing, tormenting, or abusing a dog. R.C. 955.28(B). Whether the injured party is an owner,

keeper, or harborer is not listed in the statute as a defense, nor is it an avoidance or affirmative defense under Civ.R. 8(C). The precedent of this court, and other districts, indicates that the status of an individual as an owner, keeper, or harborer is not an exception to liability under R.C. 955.28, but instead bars that individual from availing himself or herself of the protections afforded by the statute altogether. *See Khamis v. Everson*, 88 Ohio App.3d 220, 227, 623 N.E.2d 683 (2d Dist.1993) ("we hold that a 'keeper' is not within the class of people that the legislature intended to protect by enacting the strict liability provision contained in R.C. 955.28(B)"); *Buettner v. Beasley*, 8th Dist. Cuyahoga No. 83271, 2004-Ohio-1909, ¶ 22 ("the legislature, in enacting R.C. 955.28, did not intend to protect an owner, keeper, or harborer of a dog who, by the language of the statute, has an absolute duty to control the animal"); *see also Redeye v. Belohlavek*, 8th Dist. Cuyahoga No. 87874, 2007-Ohio-85, ¶ 20. In other words, whether a victim is an owner, keeper, or harborer precludes him or her from bringing suit under R.C. 955.28 rather than serving as an affirmative defense to liability. *Marin v. Frick*, 11th Dist. Geauga No. 2003-G-2531, 2004-Ohio-5642, ¶ 38 ("It is well-settled that an owner or keeper of a dog is not protected by R.C. 955.28 and cannot sue an owner or keeper to recover for injuries proximately caused by the dog").

{¶16} Based on the foregoing, the trial court did not err in instructing the jury that appellant was not entitled to recovery if the jury determined that she was an owner, keeper, or harborer of Riggs.

{¶17} Appellant's first assignment of error is overruled.

**B. Defective Jury Verdict**

**{¶18}** In her second assignment of error, appellant argues that "the trial court committed reversible error when it entered judgment in favor of DBM even though the jury's general verdict was substantially defective and inconsistent with the interrogatories."

**{¶19}** Generally,

> [a]lthough no particular form is required, the verdict of the jury, to serve as a basis for a judgment, should be clear, intelligible, consistent, and certain. It should import a definite meaning free from any ambiguity, and should show just what the jury intended, so that the court may ascertain from its terms alone, or from its terms when read in the light afforded by the pleadings of which it is the duty of the court to take judicial notice, what judgment to render. * * * The above rule is not only fundamental but also elemental in the trial of the cause.

*Ekleberry v. Sanford*, 73 Ohio App. 571, 575, 57 N.E.2d 270 (2d Dist.1943). "A verdict is defective in substance if it is wanting in some real or essential part or element and does not correspond to the issues raised by the pleadings." *Id*. at 574.

**{¶20}** Here, appellant argues that the jury's general verdict did not correspond to the issues raised in the pleadings and presented at trial. Appellant contends that "it is clear from the interrogatories answered by the jury that the jury based its general verdict on an issue not before it and that the verdict was therefore incorrect and defective." Appellant's position relies on her previously discussed argument that the issue of whether she was a keeper of Riggs was waived and erroneously submitted to the jury because it was not raised as an affirmative defense in the pleadings.

**{¶21}** In light of our resolution of appellant's first assignment of error, we find no merit to appellant's argument here. Because the issue was properly before the jury, we find no inconsistency between the general verdict and the jury's determination that although defendant was a harborer of Riggs (Interrogatory (C)), he was not liable for the injuries sustained by appellant because she was a keeper of the dog (Interrogatory (D)).

**{¶22}** Appellant's second assignment of error is overruled.

### C. Interrogatories Not Properly Before the Jury

**{¶23}** In her third assignment of error, appellant argues that "the trial court erred when it submitted to the jury Interrogatories (D) and (E) regarding her status as a keeper or harborer of Riggs." The trial court retains discretion to review the content and appropriateness of the interrogatories proposed by the parties. *Cincinnati Riverfront Coliseum v. McNulty*, 28 Ohio St.3d 333, 504 N.E.2d 415 (1986). "Proper jury interrogatories must address determinative issues and must be based upon the evidence presented." *Ramage v. Cent. Ohio Emergency Servs., Inc.*, 64 Ohio St.3d 97, 592 N.E.2d 828 (1992).

**{¶24}** Again, appellant's argument relies on her position that Interrogatories (D) and (E) should not have been submitted to the jury because the issue of whether she was a keeper or harborer of the dog was waived. Because we have determined that the issue was properly before the jury, the trial court did not err in submitting interrogatories (D) and (E). Further, as discussed in appellant's fifth and sixth assignments of error, the interrogatories were based on the evidence presented at trial.

**{¶25}** Appellant's third assignment of error is overruled.

### D. Motion for New Trial Denied

**{¶26}** In her fourth assignment of error, appellant argues that "the trial court committed reversible error when it denied her motion for a new trial."

**{¶27}** Appellant raised five grounds in support of her motion for a new trial: Civ.R. 59(A)(1), irregularity of proceeding; Civ.R. 59(A)(3), accident or surprise; Civ.R. 59(A)(6), judgment not sustained by the weight of the evidence; Civ.R. 59(A)(7), judgment contrary to law; and Civ.R. 59(A)(9), error of law occurring at trial.

**{¶28}** We review a trial court's judgment on a Civ.R. 59 motion for a new trial for an abuse of discretion. *Sarka v. Love*, 8th Dist. Cuyahoga No. 85960, 2005-Ohio-6362, ¶ 18.

**{¶29}** With the exception of appellant's manifest weight argument, which is addressed below, appellant's motion for a new trial is premised on her repeated argument that the trial court's submission of an instruction to the jury that she could not successfully bring a claim under R.C. 955.28 if she was an owner, keeper, or harborer of Riggs: (1) prevented her from having a fair trial, (2) caused undue surprise, (3) produced a judgment contrary to law, and (4) constituted prejudicial error. Again, appellant argues that DBM waived the defense by failing to plead it as an affirmative defense in its answer and that the defense was not raised until the close of evidence. Because we have already determined that DBM did not waive its ability to present evidence that appellant was the keeper of Riggs, we find no abuse of discretion.

**{¶30}** Appellant's fourth assignment of error is overruled.

### E. Sufficiency and Manifest Weight of the Evidence

**{¶31}** In her fifth assignment of error, appellant argues that there was insufficient evidence that she was a keeper of Riggs. In her sixth assignment of error, she argues that the verdict was against the manifest weight of the evidence. We address these assignments of error together.

**{¶32}** In determining whether a verdict is against the manifest weight of the evidence, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). When reviewing the sufficiency of the evidence in civil cases, the question is whether, after viewing the evidence in a light most favorable to the prevailing party, the judgment is

supported by competent, credible evidence. *Id.* Put more simply, the standard is "whether the verdict [is] one which could be reasonably reached from the evidence." *Hartford Cas. Ins. Co. v. Easley*, 90 Ohio App.3d 525, 630 N.E.2d 6 (10th Dist.1993). When engaging in this analysis, an appellate court must remember that the weight and credibility of the evidence are better determined by the trier of fact. *Id.*

{¶33} R.C. 955.28(B) states in pertinent part:

The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death, or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense against any person, or was teasing, tormenting, or abusing the dog on the owner's, keeper's, or harborer's property.

{¶34} In order to maintain a strict liability action under R.C. 955.28(B), appellant was required to establish: (1) that the defendant is the owner, keeper, or harborer of the dog; (2) that the injury was proximately caused by the dog's actions; and (3) the monetary amount of the damages. In the past, courts have held that this section of the revised code imposes strict liability on the dog owner unless one of the exceptions enumerated in the statute applies. However, many Ohio courts have since held that a victim who is an owner, keeper, or harborer of the offending dog cannot recover for injuries inflicted by it. *Buettner*, 8th Dist. Cuyahoga No. 83271, 2004-Ohio-1909, at ¶ 13, citing *Khamis*, 88 Ohio App.3d at 227, 623 N.E.2d 683 (2d Dist.1993); *Bowman v. Stott*, 9th Dist. Summit No. 21568, 2003-Ohio-7182.

{¶35} In the case at hand, appellant submits that there was insufficient evidence to support the jury's finding that she was the "keeper" of Riggs. The term "keeper" is not statutorily defined, but rather we refer to case law for its definition. In *Buettner*, this court stated that

[a] "keeper" is the person who has physical care or charge of the dog. * * * However, it is clear that there is no ironclad definition of the term "keeper." Many courts have used the elements of physical control, care and custody of the animal to determine whether someone meets the requirements of a keeper, but each case is distinguishable on its facts and each case must be considered on its own merits. This is the province of the jury, and the judge properly reserved this determination for their review.

*Id*. at ¶ 14.

{¶36} In challenging the jury's conclusion that she was a "keeper," appellant argues that "the evidence establishes, at most, that she had just a few encounters with Riggs prior to the attack." We disagree. The testimony at trial demonstrated that appellant had a significant relationship with each of Galletti's dogs, including Riggs. Galletti testified that he rescued Riggs in March 2010 following the death of his previous dog, Roddy. Thus, Riggs was the only dog living in Galletti's home in the month before the attack on April 24, 2010. Appellant's friend, Tamera Nelson, testified that she was in Galletti's house several times in the month before the incident. During cross-examination by defense counsel, Nelson was questioned specifically about appellant's relationship with the dog in the Galletti household during that month. Nelson stated that appellant appeared to have a substantial role in the care of the dog that was present in Galletti's home in the 30 days prior to the attack. She testified that appellant frequently was responsible for feeding, playing with, and letting the dog out of the house.

{¶37} We acknowledge that Riggs was only in the household for a limited period of time. However, the record reflects that appellant played a large role in the care of Galletti's previous dog and, according to Nelson's testimony on cross-examination, continued her role as care giver once Riggs was brought into the home. Accordingly, we find that there was competent and credible evidence presented at trial to support DBM's position that appellant exercised some

degree of management, possession, care, custody, or control over Riggs. *See Godsey v. Franz*, 6th Dist. Williams No. 91WM000008, 1992 Ohio App. LEXIS 1087 (Mar. 13, 1992).

{¶38} In light of the foregoing, we find there was sufficient evidence to support the jury's finding that appellant was a keeper of Riggs. Moreover, we are unable to conclude that the verdict was against the manifest weight of the evidence. We recognize that Nelson attempted to amend her cross-examination testimony when she was called by appellant's counsel as a rebuttal witness. However, the resolution of inconsistent testimony is within the province of the trier of fact. Where there are inconsistencies in the testimony, "the jury is free to believe all, part, or none of the testimony of [the] witness." *State v. Taylor*, 9th Dist. Summit No. 25490, 2011-Ohio-5009, ¶ 27. The jury, as the trier of fact, was in the best position to sort the facts and weigh the credibility of the witnesses presented at trial. We give great deference to the jury's resolution of the inconsistencies between Nelson's cross-examination and rebuttal testimonies. Further, the jury was free to reject appellant's testimony that she had no involvement with Riggs prior to the attack.

{¶39} Appellant's fifth and sixth assignments of error are overruled.

**F. Mistrial**

{¶40} In her seventh assignment of error, appellant argues that the trial court committed reversible error when it denied her motion for a mistrial.

{¶41} The decision whether to grant or deny a motion for mistrial lies within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. *State v. Willis*, 8th Dist. Cuyahoga No. 99735, 2014-Ohio-114, ¶ 36, citing *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). An "abuse of discretion" implies that the court's

attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶42} In the case at hand, appellant argues that the trial court erred in denying her motion for a mistrial following defense counsel's opening statements to the jury that "what you'll learn is that Plaintiff sued two Defendants." Appellant's counsel objected and requested a mistrial. Counsel argued that the reference to a second defendant "was almost like saying to [the jury], you know, wink, wink, this woman got a lot of money already so why should we give her more." The trial court denied appellant's motion and provided the jury with a curative instruction that they were "to disregard, completely, what has been said to this point by defense counsel."

{¶43} In challenging the trial court's judgment, appellant raises the same argument articulated by her counsel at trial. Appellant contends that defense counsel's reference to Galletti, who settled prior to trial, was improper and influenced the jury's verdict by allowing the jury to infer that appellant was already compensated for her injuries

{¶44} After a careful review of the opening statement in its entirety, we find that the trial court's denial of appellant's motion for a mistrial was not an abuse of discretion. Although defense counsel should not have stated that there were originally "two defendants," it is evident that counsel was merely attempting to explain that DBM, a business, was the only defendant in this action and that the jury would be asked to determine if DBM was the owner, keeper, or harborer of the dog. To the extent appellant argues she was prejudiced by the inference that she had entered a settlement with Galletti, we presume that the jury followed the trial court's instructions to disregard defense counsel's statement.

{¶45} Appellant's seventh assignment of error is overruled.

{¶46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY
(SEE ATTACHED OPINION)

MELODY J. STEWART, J., CONCURRING IN JUDGMENT ONLY:

{¶47} I agree with the majority's disposition, but write separately to question whether DBM could, as a matter of law, be found liable after Galletti had been dismissed before trial. Any liability on the part of DBM would be vicarious, hence without a finding of derivative fault by Galletti, I question whether DBM could be held liable at all.

{¶48} In *Natl. Union Fire Ins. Co. of Pittsburgh v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, the Supreme Court held that "'[a] settlement with and release of the servant will exonerate the master. Otherwise, the master would be deprived of his right of reimbursement from the servant, if the claim after settlement with the servant could be enforced against the master.'" *Id.* at ¶ 22, quoting *Losito v. Kruse*, 136 Ohio St. 183, 188, 24 N.E.2d 705

(1940). And the Supreme Court made it clear that "this rule applies not only to claims of respondeat superior, but also to other types of vicarious liability." *Id*. at ¶ 23.

**{¶49}** Galletti, not DBM, owned the dog. The evidence showed that Galletti ran a welding business on the premises as a sole owner, and apparently ran a shop on the premises. It is unclear from the record whether DBM owned the premises, but one would expect not because Galletti could protect the house from judgment creditors in the event there was ever liability against DBM. In any event, DBM could have no connection to the dog other than that it was used to protect Galletti's premises and, by extension, DBM.

**{¶50}** As postured, liability in this case would appear to exist only against Galletti and any liability that DBM had would be derivative, stemming from Galletti being an employee of the business. Therefore, a settlement and dismissal of Galletti would mean that DBM could not be liable.

**{¶51}** If DBM owned the dog, that is, the dog was an asset of the corporation, it is possible that DBM could be liable. But there is no evidence to suggest that DBM owned the dog. By all accounts, Galletti bought the dog and registered it in his own name, not the name of the corporation. In addition, it seems unlikely that DBM could be found liable on the basis that it was a keeper or harborer of the dog. There is no statutory definition of the word "harborer," but this court has defined a harborer as one who has possession and control of the premises where the dog lives, and silently acquiesces to the dog's presence. *Buettner v. Beasley*, 8th Dist. Cuyahoga No. 83271, 2004-Ohio-1909. As noted, Galletti, not DBM, owned and controlled the premises, so as a matter of law it is unclear how DBM could have harbored the dog.

**{¶52}** Admittedly, DBM is not raising this as an issue on appeal. But it did raise the issue in its motion for summary judgment, the substance of which was that "DBM cannot be held

liable for Plaintiff's injuries because it is not the owner, keeper, or harborer of Riggs. It is undisputed that DBM did not own Riggs." Motion for Summary Judgment at 4. The evidence at trial did not show anything to the contrary. I believe, therefore, that DBM could not be held liable as a matter of law once Galletti was dismissed from the lawsuit.