HICKS et al., Appellants,

v.

LEFFLER, Appellee.

[Cite as *Hicks v. Leffler* (1997), 119 Ohio App.3d 424.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE10–1297.

Decided April 24, 1997.

James D. McNamara, for appellants.

Janet E. Jackson, City Attorney, and Diane M. Meftah, Assistant City Attorney, for appellee.

CLOSE, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas, granting summary judgment to Officer Gilbert Leffler, defendant-appellee. Because there remain genuine issues of material fact, the judgment of the trial court is reversed.

On January 12, 1994, Charie Hicks, plaintiff-appellant, a thirteen-year-old, was walking with her sister along the west side of James Road at about 6:00 p.m., when her grandmother pulled up in an automobile on the east side of James Road and offered the girls a ride. The girls crossed the street at a point that was other than at a crosswalk. Officer Gilbert Leffler was driving a police wagon southbound on James Road and abruptly stopped when appellant crossed the street in front of his vehicle. He stopped the police van, got out and yelled for her to stop. When Officer Leffler approached appellant, he grabbed her arm; appellant jerked her arm away. Officer Leffler then took appellant into custody, arrested her, charged her with jaywalking, a minor misdemeanor under Columbus Traffic Code 2171.05(c), and took her to jail. The jaywalking charge was later dismissed.

Charie Hicks brought the instant action, through her mother, against Officer Leffler and against the city of Columbus for various state claims, including claims of false arrest, false imprisonment and malicious prosecution, and federal claims of violation of the Fourth and Fourteenth Amendments to the United States Constitution, and Section 1983, Title 42, U.S.Code, under color of state law. Appellants also alleged that the city of Columbus failed to adequately train its officers, and failed to adequately supervise and discipline its officers. The trial court granted summary judgment as to all claims and appellants bring this appeal only as to their claim against Officer Leffler.

Appellants bring a single assignment of error as follows:

"The Trial Court erred to the prejudice of the Appellant by awarding summary judgment to the Appellee Leffler when there exist genuine issues of material fact, and when this Appellee was not entitled to judgment as a matter of law."

It is axiomatic that certain criteria must be met in order for the trial court to grant summary judgment. Civ.R. 56(C) mandates that the following be established: (1) that there is no genuine issue of any material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881. Summary judgment will not be granted until the movant sufficiently demonstrates the absence of any genuine issue of material fact. A "party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274. When reviewing the grant of a motion for summary judgment, an appellate court reviews the judgment independently, or *de novo,* not deferring to the trial court. *Bhavnani v. Voldness* (Sept. 28, 1995), Franklin App. No. 95APE03–284, unreported, 1995 WL 578124; *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 536 N.E.2d 411.

We address, first, the issue of qualified immunity for governmental employees. As appellants have alleged both federal and state claims, we look at the issue of immunity from both viewpoints. First, with regard to immunity for a federal claim, in order to defeat a defendant's motion for summary judgment under a qualified immunity defense, a "plaintiff must: 1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray v. Sandusky* (C.A.6, 1995), 49 F.3d 1154, 1158; *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396. Once determined by a subjective test, the term "reasonable" now must be determined by an "objective element [which] involves a presumptive knowledge of and respect for 'basic unquestioned constitutional rights.' " *Id.* at 815, 102 S.Ct. at 2737, 73 L.Ed.2d at 408. While the "qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law,' " *Hunter v. Bryant* (1991), 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596, quoting *Malley v. Briggs* (1986), 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278:

"If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors." *Harlow,* at 818–819, 102 S.Ct. at 2738–2739, 73 L.Ed.2d at 411.

■ Taken together, *Hunter* and *Harlow* stand for the proposition that, where the law has been clearly established, a mistaken decision made in extraordinary circumstances may not lead to loss of immunity.

■■ In the instant case, our review leads us to the conclusion that there exists a genuine issue of material fact regarding Officer Leffler's immunity from the federal claims. We hold that reasonable minds could find that there were no extraordinary circumstances prompting appellant's arrest. It is obvious that appellant's right to be free from unreasonable seizures is a clearly established right. However, the difficulty with the trial court's analysis is that the court accepted as reasonable Officer Leffler's statement that he did not know that he was not entitled to arrest appellant. The trial court essentially applied a subjective standard, *i.e.,* Officer Leffler's belief. That is simply not the law. Further, the trial court had previously acknowledged in its opinion that it was bound by an objective standard, yet applied a subjective standard. We hold that reasonable minds could come to different conclusions regarding whether Officer Leffler should have known that his conduct was in violation of appellant's liberty rights.

■ Dealing now with the issue of Officer Leffler's immunity under the state claims, we look at R.C. 2744.03(A)(6), which provides:

" * * * [T]he employee [of a political subdivision] is immune from liability unless one of the following applies:

" * * *

"(b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]"

Once again, we hold that reasonable minds could come to different conclusions regarding the intent of Officer Leffler's actions on the night in question. We find that there is question as to whether Officer Leffler acted "with malicious purpose, in bad faith, or in a wanton or reckless manner."

The term "malice" is defined as the "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Jackson v. Butler Cty. Bd. of Cty. Commrs.*

(1991), 76 Ohio App.3d 448, 453–454, 602 N.E.2d 363, 367. The definition of "bad faith" is "[t]he opposite of 'good faith,' generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, * * * not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." Black's Law Dictionary (5 Ed.1979) 127. Also, and by way of analogy to insurance law, "bad faith" is that for which there is no "reasonable justification." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 554, 644 N.E.2d 397, 399–400. "Reckless" is defined as " 'disregard of the safety to others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, 708. Further, "[t]he term 'reckless' is often used interchangeably with * * * 'wanton.' " The definition of "reckless," set forth above, applies equally to the conduct characterized as "wanton." *Id.* at 104, 559 N.E.2d at 707–708. Reasonable minds could find that Officer Leffler acted recklessly.

In defense, Officer Leffler relies on R.C. 2935.26(A), which provides, in part:

"Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:

"(1) The offender requires medical care or is unable to provide for his own safety.

"(2) The offender cannot or will not offer satisfactory evidence of his identity.

"(3) The offender refuses to sign the citation."

Therefore, for any minor misdemeanor, an arrest may not be effected unless one of the preceding events occurs. Officer Leffler further argues that R.C. 2151.31 provides that a juvenile may be taken into custody pursuant to the laws of arrest or when an officer has reasonable grounds to believe that the child might be in immediate danger. He also argues that Juv.R. 6(A) provides:

"(A) A child may be taken into custody * * *:

" * * *

"(2) Pursuant to the laws of arrest[.]"

We hold, however, that, if the circumstances were not proper for an adult to be arrested, then generally it would not be proper for a juvenile to be arrested, except, of course, where the misdemeanant is unable to provide for his or her own

safety. The facts of the instant case do not conclusively support Officer Leffler's defense based upon R.C. 2935.26(A), 2151.31, or Juv.R. 6(A). The argument that appellant was unable to provide for her own safety is simply not established in the record. The deposition testimony showed that appellant was crossing the street to get in her grandmother's car. Further, the testimony evinced the fact that the grandmother was at the scene, attempted to speak with one of the police officers, and called appellant's mother. Reasonable minds could find that appellant was in no immediate danger. If, in fact, appellant had placed herself in danger in committing the jaywalking violation, there is no question that, once she had crossed the street, danger to her person no longer existed. Moreover, Officer Leffler's deposition testimony showed that he was unable to recall specific details about any danger to which appellant might have been exposed. Once again, we find that genuine issues of material fact abound.

Officer Leffler also argues that Columbus Division of Police Directive 3.30 provides that a summons may not be issued directly to a juvenile:

"ISSUANCE OF MISDEMEANOR CITATIONS

"1. * * * Misdemeanor citations may be issued to adult and juvenile offenders.

"2. An arrest may be made for a minor misdemeanor when:

"A. Violators require medical treatment or are unable to provide for their own safety.

"B. Violators cannot or will not provide satisfactory proof of their identity.

"C. Violators refuse to sign the citation."

Officer Leffler maintains that, because he was unable to issue the summons directly to appellant, he, therefore, had authority under R.C. 2935.26 or Juv.R. 6(A)(2) to arrest appellant. We make the distinction here that this was clearly not a summons; it was merely a citation. Moreover, Directive 3.30 provides that "misdemeanor citations may be issued to adult and juvenile offenders," so Officer Leffler could have handed a jaywalking ticket to appellant. If, in fact, Directive 3.30 were interpreted to preclude handing a citation to a juvenile offender for any traffic violation, that directive would be inconsistent with traffic citations, which are directly handed to juveniles on a daily basis.

Finally, there is a question as to whether there was probable cause for the arrest, as an arrest for a minor misdemeanor is not standard procedure. The Columbus Traffic Code 2171.05(c) sets forth the offense of "jaywalking" as:

"No pedestrians shall cross a roadway at a place other than a crosswalk except in cases where crossroads are an unreasonable distance apart."

There was testimony by Officer Leffler that there were no crosswalks nearby. The issue of "unreasonable distance apart" also presents an issue of material fact.

In summary, we conclude that many genuine issues of material fact exist and that reasonable minds could come to different conclusions in the instant case. Accordingly, appellant's assignment of error is sustained and the decision of the trial court is reversed, and this cause is remanded to the trial court for further procedure consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PETREE and DESHLER, JJ., concur.