[Cite as *Pierce v. Woyma*, 2012-Ohio-3947.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97545

# JENNIFER J. PIERCE

PLAINTIFF-APPELLEE

vs.

# FRANK J. WOYMA, JR., ET AL.

DEFENDANTS-APPELLANTS

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CP CV-682983

**BEFORE:** E. Gallagher, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 30, 2012

**ATTORNEYS FOR APPELLANTS**

Barbara A. Langhenry
Interim Director of Law
Jennifer Meyer
Assistant Director of Law
City of Cleveland Dept. of Law
601 Lakeside Ave. E., Room 106
Cleveland, Ohio    44114


**ATTORNEY FOR APPELLEE**

Brent L. English
Law Offices of Brent L. English
M.K. Ferguson Plaza, Suite 470
1500 West Third Street
Cleveland, Ohio    44113-1422

EILEEN A. GALLAGHER, J.:

{¶1} Frank Woyma, Jr., appeals the decision of the trial court denying his motion for summary judgment. Woyma argues the trial court erred when it determined that he was not entitled to immunity under R.C. Chapter 2744 of the Ohio Revised Code, and when it failed to grant his motion to strike. For the following reasons, we reverse the decision of the trial court.

{¶2} On October 28, 2005, Jennifer Pierce was with four other women and her boyfriend at a nightclub on West Sixth Street in the Warehouse District of Cleveland. The group left the nightclub and began walking down a public sidewalk with Pierce's boyfriend holding a beer bottle. Woyma, a Cleveland Police Officer, was working department-approved secondary employment in the Warehouse District that evening.

{¶3} Pierce alleged that Woyma jumped on her boyfriend's back and began striking him with the beer bottle that had been in her boyfriend's hand. During the altercation, Pierce's boyfriend, after getting Woyma off of his back, pushed Woyma and the two fell to the ground.

{¶4} She further alleged a number of people, some of whom were police officers, converged on Pierce's boyfriend and began striking him. Pierce began to cry and protested what was happening to her boyfriend. A female officer then handcuffed Pierce for allegedly attempting to strike one of the officers, but she released Pierce after Pierce had calmed down and her friends insisted she had done no such thing.

**{¶5}** Woyma then approached Pierce on the opposite side of the street, complaining about what Pierce's boyfriend had done. Woyma asked if Pierce's boyfriend had any assets and threatened to sue her boyfriend. Pierce was not placed under arrest at the scene, but she was later indicted by the Cuyahoga County Grand Jury for obstructing official business and obstructing justice. Pierce elected to proceed to trial and she was found not guilty of obstructing official business. The charge of obstructing justice was dismissed on March 21, 2006.

**{¶6}** Pierce filed the instant lawsuit on January 26, 2009, alleging claims of malicious prosecution, intentional infliction of emotional distress, abuse of process and respondeat superior liability against both Woyma and the city of Cleveland ("the City"). The City and Woyma moved to dismiss Pierce's claims and Pierce did not oppose the motion. On September 3, 2009, the trial court granted the unopposed motion to dismiss, and on October 2, 2009, Pierce filed an appeal.

**{¶7}** On November 18, 2011, this court affirmed in part, reversed in part and remanded the matter to the trial court. *Pierce v. Woyma*, 8th Dist. No. 94037, 2010-Ohio-5590. Specifically, this court upheld the judgment in favor of the city on immunity grounds, but reversed the trial court's decision dismissing Pierce's claims of malicious prosecution, intentional infliction of emotional distress and abuse of process claims. *Id.* The case was remanded to the trial court and discovery commenced. On July 1, 2011, Woyma filed a motion for summary judgment. On August 19, 2011, Pierce filed her brief in opposition and on October 17, 2011, the trial court denied Woyma's motion for summary judgment.

{¶8} Woyma appeals, raising the two assignments of error contained in the appendix to this opinion.

{¶9} In his first assignment of error, Woyma argues the trial court erred when it denied his motion for summary judgment because he was immune from liability under Chapter 2744 of the Revised Code. Included in this assigned error is Woyma's argument that Pierce's remaining claims of malicious prosecution, abuse of process and intentional infliction of emotional distress must fail because Pierce can prove no set of facts to establish each claim.

{¶10} Generally, the denial of summary judgment is not a final, appealable order. *See Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878. However, when a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and thus is a final, appealable order pursuant to R.C. 2744.02(C). *Hubbell,* ¶ 27.

{¶11} Appellate courts review trial court summary judgment decisions de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, appellate courts must independently review the record to determine if summary judgment is appropriate. In other words, appellate courts need not defer to trial court summary judgment decisions. *See Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993). Therefore, to determine whether a trial court properly awarded summary judgment, an appellate court must review the Civ.R. 56 summary judgment standard as well as the applicable law. Civ.R.

56(C) provides:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶12} Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law and (3) it appears from the evidence that reasonable minds can come to but one conclusion and, after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *See*, *e.g.*, *Vahila v. Hall,* 77 Ohio St.3d 421, 429-430, 674 N.E.2d 1164 (1997).

{¶13} An employee of a political subdivision is entitled to a general grant of immunity, but may be liable if one of the three circumstances described in R.C. 2744.03(A)(6) applies. *Long v. Hanging Rock*, 4th Dist. No. 09CA30, 2011-Ohio-5137. R.C. 2744.03(A)(6) provides as follows:

> (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

{¶14} In the present case, the parties agree that Woyma was acting within the course and scope of his employment on October 28, 2005 and that R.C. 2744.03(A)(6)(c) does not apply. Our analysis then centers around R.C. 2744.03(A)(6)(b): whether Woyma acted with malicious purpose, in bad faith or in a wanton or reckless manner.

{¶15} As a general matter, whether an employee is entitled to R.C. 2744.03(A)(6) immunity is ordinarily a question of law. *See*, *e.g.*, *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992); *Long*, ¶ 17. However, whether the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner generally are questions of fact. *Id.*; *see also Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573, ¶ 14. Therefore, a trial court may not grant summary judgment on the basis of R.C. 2744.03(A)(6) immunity unless reasonable minds can only conclude that the employee did not act with malicious purpose, in bad faith or in a wanton or reckless manner. *Long,* ¶ 17. If reasonable minds could disagree on these issues, then a court may not grant the employee summary judgment based upon statutory immunity. Summary judgment in favor of a political subdivision's employee is appropriate only when the facts are clear and fail to rise to the level of conduct that could

be construed as malicious, in bad faith or wanton and reckless. *Id.* In *Long v. Hanging Rock*, the Fourth Appellate District defined the terms "malicious purpose," "in bad faith," or "in a wanton or reckless manner" as follows:

> The term "malice" means the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified. *Hicks v. Leffler,* 119 Ohio App.3d 424, 428-429, 695 N.E.2d 777 (1997). "Bad faith" implies sinister motive that has "no reasonable justification." *Id.* at 429, 695 N.E.2d 777. "Bad faith" embraces more than bad judgment or negligence. *Id.*, citing *Parker v. Dayton Metro. Hous. Auth.*, 2nd Dist. No. 15556, 1996 WL 339935 (May 31, 1996). It imports a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Id.*; *Jackson v. Butler Cty. Bd. of Cty. Commrs.*, 76 Ohio App.3d 448, 454, 602 N.E.2d 363 (1991).
>
> Wanton misconduct has been defined as the failure to exercise any care whatsoever. *See Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d at 356, 639 N.E.2d 31 (1994), citing *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus. The Ohio Supreme Court held that "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *See Id.*, quoting *Roszman v. Sammett*, 26 Ohio St.2d 94, 96-97, 55 O.O.2d 165, 269 N.E.2d 420 (1971). Such perversity requires that the actor be conscious that his conduct will, in all likelihood, result in an injury. *See Id.* Moreover, the standard of proof to show wanton misconduct is high. *Id.*
>
> "Reckless" refers to conduct that causes an unreasonable risk of harm and is "substantially greater than that which is necessary to make [an actor's] conduct negligent." *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705 (1990), quoting 2 Restatement of the Law 2d, Torts (1965) 587, Section 500. Likewise, an individual acts recklessly when he or she, bound by a duty, does an act or intentionally fails to do an act, knowing, or having reason to know, of facts that would lead a reasonable person to realize not only that there is an unreasonable risk of harm to another, but also that such risk is substantially greater than that which is necessary for negligence. *See Id.*; *see also*, *Fabrey*, 70 Ohio St.3d at 356, 639 N.E.2d 31.

**{¶16}** It is with the above cited standards in mind that we analyze Pierce's

claims.

Malicious Prosecution

**{¶17}** The elements of the tort of malicious criminal prosecution are: (1) malice in instituting or continuing prosecution, (2) lack of probable cause and (3) termination of prosecution in favor of the accused. *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732 (1990). In an action for malicious prosecution, the lack of probable cause is the gist of the action. *Pierce v. Woyma,* 8th Dist. No. 94037, 2010-Ohio-5590. Probable cause does not depend on whether the claimant was guilty of the crime charged. *Id.* Rather, the question is whether the accuser had probable cause to believe that the claimant was guilty. *Id.* The person instituting the criminal proceeding is not bound to have evidence sufficient to insure a conviction but is only required to have sufficient evidence to justify an honest belief in the guilt of the accused. *Id.*

**{¶18}** The return of an indictment by a grand jury is evidence of probable cause; when an indictment has been returned by the grand jury, the plaintiff has the burden of producing substantial evidence to establish lack of probable cause. *Deoma v. Shaker Hts.*, 68 Ohio App.3d 72, 587 N.E.2d 425 (8th Dist.1990); *Adamson v. May Co.*, 8 Ohio App.3d 266, 268, 456 N.E.2d 1212 (8th Dist.1982). The burden then shifts to the plaintiff who must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular. *Deoma* at 77. We find that Pierce failed to meet this burden.

**{¶19}** In moving for summary judgment, Woyma set forth specific facts

demonstrating that he did not act with actual malice, that he had nothing to do with the charges brought against Pierce and that Pierce failed to establish a lack of probable cause. Specifically, Woyma explains the following: he did not arrest Pierce; he did not institute criminal charges against Pierce; he merely wrote "an obstructing justice named suspect report involving a Jennifer Pierce"; that ultimately a superior officer and a prosecutor determined to charge Pierce with obstructing official business and obstructing justice and that a grand jury returned an indictment charging Pierce with obstructing official business and obstructing justice. We find these facts establish not only a lack of malicious conduct but a lack of any genuine issue of material fact for trial.

{¶20} In response, Pierce has not set forth any evidence that the indictment was the result of perjured testimony or that the grand jury proceedings were otherwise significantly irregular. More importantly, Pierce has not established the most basic element of her claim, that Woyma instituted criminal proceedings against her. The evidence before this court reveals that Woyma executed a report about Pierce's involvement on October 28, 2005 and that the decision to charge her was made by his superior and a member of the prosecutor's office.

{¶21} Accordingly, there are no genuine issues of material fact that remain to be litigated. Pierce's claim for malicious prosecution fails as a matter of law. Woyma was entitled to the grant of immunity.

### Abuse of Process

{¶22} The elements of the tort of abuse of process are (1) that legal proceedings have been set in motion in proper form and with probable cause; (2) that proceedings

have been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage resulted from the wrongful use of process. *Yaklevich v. Kemp, Shaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 626 N.E.2d 115 (1994).

{¶23} Although we acknowledge that Pierce has the right of alternative pleading as outlined in Civ.R. 8(E)(2), recovery under the competing causes of action for malicious prosecution and abuse of process under the same set of facts is impossible. *Yaklevich*, supra.

{¶24} In the present case, Woyma presented this court with prima facie evidence of probable cause, i.e., the return of a grand jury indictment charging Pierce with obstructing official business and obstructing justice. In response, Pierce failed to set forth any evidence demonstrating that the indictment was the result of perjured testimony or that the proceedings were, in any way, irregular. We concluded that Pierce's claim for malicious prosecution must fail. We now determine whether any genuine issue of material fact remains on Pierce's claim for abuse of process.

{¶25} In moving for summary judgment, Woyma argues that he had no involvement with the decision to charge Pierce or with her trial on the indicted charges and thus, he did not act maliciously, with bad faith or in a wanton or reckless manner. Further, Woyma claims that because Pierce was found not guilty, she cannot show damages from any alleged wrongful use of process. In response, Pierce fails to establish the existence of any genuine issue for trial. Again, Pierce has not established the basic element of Woyma's involvement with the decision to charge her with a crime

or his involvement with the criminal proceeding in which a jury found her not guilty. Based on the facts before this court, we conclude that Woyma was entitled to a grant of immunity on Pierce's claim of abuse of process.

<u>Intentional Infliction of Emotional Distress</u>

{¶26} To establish a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant intended to cause the plaintiff serious emotional distress; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. *Phung v. Waste Mgt. Inc.,* 71 Ohio St.3d 408, 410, 1994-Ohio-389, 644 N.E.2d 286.

{¶27} In moving for summary judgment, Woyma established the following facts: he did not arrest Pierce, a superior officer and a member of the prosecutor's office obtained charges of obstructing official business and obstructing justice against Pierce, any actions taken by Woyma against Pierce were not intended to cause serious emotional distress, Woyma did not engage in any extreme or outrageous conduct towards Pierce and Pierce did not suffer a severe injury.

{¶28} In response, Pierce fails to establish the existence of any genuine issue of material fact for trial. Pierce attaches the deposition testimony from eyewitnesses and her own affidavit in support of her allegations that Woyma said highly inflammatory and insulting things to her. She also includes as evidence of damage that she was charged with two felonies "for something she never did." However, none of this evidence rises to the level of proof required to overcome summary judgment.

{¶29} Pierce's own brief categorizes Woyma's actions towards her as saying

"highly inflammatory and insulting things to her" including calling her a "fucking bitch" several times. While we can state that Woyma's conduct was not exemplary, we cannot conclude that Woyma's conduct was extreme or outrageous or that it was intended to cause Pierce emotional distress. As such, Pierce's claim fails as a matter of law.

{¶30} Woyma was entitled to the grant of immunity and his motion for summary judgment should have been granted. Woyma's first assignment of error is sustained.

{¶31} Our analysis of Woyma's first assignment of error renders the remainder of his appeal moot. The judgment of the trial court is reversed and the case is remanded.

It is ordered that appellants recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
MELODY J. STEWART, P.J., CONCURS IN PART
AND DISSENTS IN PART (WITH SEPARATE
OPINION)


MELODY J. STEWART, P.J., CONCURRING IN PART AND DISSENTING IN

PART:

{¶32} I agree that Pierce failed to show a triable issue of fact on the question of whether Woyma's conduct at the time of the arrest was so outrageous that it would support a claim of intentional infliction of emotional distress. I believe, however, that Pierce rebutted the presumption that the grand jury indictment issued on probable cause by offering evidence to show that Woyma may not have acted in good faith to establish the cause necessary for prosecuting Pierce.

{¶33} In *Adamson v. The May Co.*, 8 Ohio App.3d 266, 456 N.E.2d 1212 (8th Dist.1982), we recognized a grand jury indictment is not a conclusive presumption of good faith in malicious prosecution cases. We stated that an indictment raises nothing more than a rebuttable presumption of good faith prosecution because to hold otherwise would mean that "a truly malicious accuser could lie at the preliminary hearing or the grand jury sessions and thereby obtain a bind over order or an indictment which screened him from civil liability for his malicious prosecution." *Id.* at 269. We also said:

> If one party relies on a presumption and his adversary introduces evidence of a substantial nature which counterbalances the presumption, it disappears. * * * Absent a controlling presumption, conflicting evidence about the defendant's probable cause to believe the plaintiff had committed an offense presents a factual issue that should be resolved by the jury.

*Id*. at 270.

{¶34} Pierce's prosecution was initiated by Woyma's written report naming Pierce as a suspect in an obstruction of justice charge. It is unclear from the record how Woyma learned about Pierce's conduct for purposes of writing that report. He did not offer an affidavit in support of his motion for summary judgment, so he did not identify

the source of the information contained in his report. The female officer's deposition testimony suggested that Woyma was otherwise occupied in subduing Pierce's boyfriend and had nothing to do with Pierce's arrest, so Pierce is entitled to have the evidence viewed as showing that Woyma had no first-hand knowledge of what he wrote in the report. The most obvious source of his information would have been the female officer, but she testified at deposition that she did not discuss Pierce's conduct with Woyma and that she was not asked to write a report about Pierce's conduct. Indeed, she testified that she was not called as a witness in Pierce's criminal trial and that she "didn't know anything even went on with this thing" until the civil lawsuit had been filed. There was evidence that the female police officer related facts of the incident to a supervisor who was on the scene, but Woyma offered no evidence to say that he learned any facts from this supervisor nor did the supervisor state that he related facts to Woyma.

{¶35} Given the lack of sources for the facts contained in his report, reasonable minds could differ on whether Woyma prepared his report with probable cause. And given Pierce's testimony that Woyma was irate at the scene of the fight, repeatedly calling her a "bitch" and threatening to sue her and her boyfriend for injuries he suffered during the scuffle, reasonable minds could find that the factual allegations contained in Woyma's report may have been the product of revenge, thus making the grand jury indictment the product of an irregularity. This is not to say that, indeed, Woyma acted improperly. But for purposes of summary judgment, Pierce offered enough evidence from which reasonable minds could differ on the question of whether he did. On that basis, I believe the court properly denied immunity on the malicious prosecution count.

Appendix

Assignments of Error:

"I.   The trial court erred as a matter of law in denying appellant Officer Woyma's motion for summary judgment because he is immune from liability under Chapter 2744.

II.   The trial court erred as a matter of law by not striking Plaintiff-Appellee's use of a criminal deposition of Joseph Kalamar in her opposition to summary judgment brief because the deposition does not support any of plaintiff-appellee's claims and is highly prejudicial."