[Cite as *Gilbert v. Cleveland*, 2013-Ohio-5252.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99708

---

## BONNIE GILBERT, ADMIN., ETC., ET AL.

### PLAINTIFFS-APPELLEES

vs.

## CITY OF CLEVELAND, ET AL.

### DEFENDANTS

[Appeal By Defendant, John Cotner]

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-774595

**BEFORE:** E.T. Gallagher, J., Celebrezze, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 27, 2013

**ATTORNEYS FOR APPELLANT**

Ernest L. Wilkerson, Jr.
Kathryn M. Miley
Jamie L. Snow
Wilkerson & Associates Co., L.P.A.
1422 Euclid Avenue, Suite 248
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEES**

Stephen J. Charms
Charms and Giusto, L.L.C.
1892 Dunellon Drive
Lyndhurst, Ohio 44124

Michael J. O'Shea
Lipson O'Shea Legal Group
Beachcliff Market Square
19300 Detroit Road, Suite 202
Rocky River, Ohio 44116


**For The City of Cleveland**

Barbara A. Langhenry
Law Director
City of Cleveland

BY:    Gary S. Singletary
Assistant Law Director
Cleveland City Hall, Room 106
601 Lakeside Avenue
Cleveland, Ohio 44114-1077

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant John Cotner ("Cotner") appeals the denial of his motion for summary judgment. We find no merit to the appeal and affirm.

{¶2} Plaintiff-appellee, Bonnie Gilbert ("Bonnie"), on behalf of her minor children, herself, and the estate of George Gilbert ("Gilbert"), filed a complaint against Cotner and the city of Cleveland ("Cleveland" or "the city") for damages arising from a fatal car accident. Gilbert's car, which had been traveling southbound, stalled in the left lane of Interstate 71 shortly before the accident. Cotner was also traveling southbound behind an SUV in the left lane of Interstate 71, north of Gilbert. After his car stalled, Gilbert began pushing his car from the left lane, across traffic to the right berm of the highway. When the SUV approached Gilbert, it swerved to avoid hitting him, and Gilbert suddenly became visible to Cotner, who was still behind the SUV. Cotner also swerved but was unable to avoid the collision. Cotner's vehicle struck Gilbert's car, knocked him to the ground, and caused injuries to the lower half of his body. Months later, while in a skilled care nursing home, Gilbert expired. It is undisputed that Cotner was within the course and scope of his employment as a Cleveland police officer when his police cruiser collided with Gilbert's car.

{¶3} Several Cleveland police officers responded to the scene, including Patrolman Scott Ford ("Ford") of the department's accident investigations unit. Ford

authored a crash report, and Cotner prepared a motor vehicle accident report. Cotner supplemented his report with a more detailed narrative the day after the accident. Cotner never mentioned in any of these reports that he was pacing the SUV to determine whether it was speeding.

{¶4} The Cleveland police department conducted an investigation to determine who and/or what caused the accident. A five-member panel reviewed the crash reports and Cotner's statement. All five members of the panel unanimously testified at their respective depositions that they were unaware Cotner claimed he was pacing the SUV before the accident.

{¶5} In his motion for summary judgment, Cotner argued he was immune from liability under R.C. Chapter 2744 because he was within the course and scope of his employment as a Cleveland police officer at the time of the accident. He also argued there was no evidence that he acted willfully, wantonly, or recklessly that would strip his immunity. In response, Bonnie argued Cotner is not entitled to the immunity provided in R.C. 2744.02 because there is no evidence that he was on an "emergency call" as defined in R.C. 2744.01(A) at the time of the accident. The trial court agreed and denied Cotner's motion for summary judgment. This appeal followed.

## Standard of Review

{¶6} We review an appeal from summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of

material fact as to the essential element of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the non-moving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E). Summary judgment is appropriate when, after construing the evidence in a light most favorable to the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the non-moving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

### Governmental Immunity

{¶7} Cotner argues the trial court erred in denying his motion for summary judgment when there is no genuine issue of material fact disputing his entitlement to sovereign immunity.

{¶8} R.C. Chapter 2744 sets forth a three-tiered analysis for determining whether governmental immunity applies to a political subdivision. *Greene Cty. Agricultural Soc. v. Liming,* 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000). The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. *Id*. at 556-557; R.C. 2744.02(A)(1). Second, the court must determine if any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998). If any of the

exceptions to immunity apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires the court to determine whether any of the defenses set forth in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 9.

{¶9} Cotner contends appellants erroneously assert that the motor vehicle exception provided in R.C. 2744.02(B)(1) strips Cotner of the cloak of sovereign immunity. Appellants maintain there is a genuine issue of material fact as to whether Cotner was on an "emergency call," which would provide a defense to liability pursuant to R.C. 2744.02(B)(1)(a). R.C. 2744.02(B)(1), provides that "*political subdivisions are liable* for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority." (Emphasis added.) Cotner argues that because the motor vehicle exception expressly reinstates liability on "political subdivisions" but not "employees of political subdivisions," the exception does not apply to him. We agree.

{¶10} The immunity analysis is different for individual employees of political subdivisions. Instead of a three-tiered analysis, R.C. 2744.03(A)(6) states that an employee of a political subdivision is immune from liability unless the employee's acts "were manifestly outside the scope of the employee's employment or official responsibilities," or "were with malicious purpose, in bad faith, or in a wanton or reckless manner." *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d

392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 36, citing *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 17. Therefore, the crucial issue in this case is whether there exists a genuine issue of material fact as to whether Cotner acted maliciously, wantonly, recklessly, or in bad faith at the time of the accident.

{¶11} The Ohio Supreme Court has defined and distinguished the terms "wanton" and "reckless" conduct. *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 24, quoting *Res. Trucking Co. v. Fairchild*, 128 Ohio St. 519, 531-532, 191 N.E. 745 (1934). In *Anderson*, the Ohio Supreme Court defined "wanton misconduct" as conduct that

> manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury.

*Id.*, quoting *Universal Concrete Pipe Co. v. Bassett*, 130 Ohio St. 567, 200 N.E. 843 (1936).

{¶12} The *Anderson* court defined "reckless misconduct" as follows:

> Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson* [*v. McNeill*], 53 Ohio St.3d 102 559 N.E.2d 705, at 104-105; adopting 2 Restatement of the Law 2d, Torts, at 587 (1965); *see also* Black's Law Dictionary 1298-1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm).

{¶13} This court has defined "malice" and "bad faith" for purposes of R.C. 2744.03(A)(6) in *Pierce v. Woyma*, 8th Dist. Cuyahoga No. 97545, 2012-Ohio-3947, ¶ 15. In *Pierce*, we defined malice as "the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Id.*, quoting *Hicks v. Leffler*, 119 Ohio App.3d 424, 428-429, 695 N.E.2d 777 (1997). We defined "bad faith" as more than bad judgment or negligence. *Id.*, quoting *Hicks*. Bad faith imports a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." (Citations omitted.) Cotner argues there is no evidence that he acted maliciously, wantonly, recklessly, or in bad faith at the time of the accident. He testified at deposition that he was traveling within the speed limit prior to observing the SUV. He also stated that he maintained an assured clear distance behind the SUV but that Gilbert's stalled vehicle appeared suddenly from behind the SUV and that it was impossible to avoid the collision.

{¶14} In support of his argument, Cotner also relies on *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73, wherein the Ohio Supreme Court held that "violation of directives or policies does not rise to the level of reckless conduct unless a plaintiff can establish that the violator acted with a perverse disregard of the risk." In other words, Cotner contends that even if he failed to maintain an assured clear distance, was speeding, or was otherwise in violation of a department policy, these violations alone are not enough to establish bad faith, malicious, wanton, or reckless

misconduct.   He argues he is entitled to summary judgment because there is no evidence that he "acted with a perverse disregard of the risk."   *Id.*

{¶15} However, whether an actor's conduct was malicious, wanton, reckless, or in bad faith is generally a fact question for the jury to decide.   *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994); *Taylor v. Cleveland*, 8th Dist. Cuyahoga No. 97597, 2012-Ohio-3369, ¶ 22.   In *Hunter v. Columbus*, 139 Ohio App.3d 962, 970, 746 N.E.2d 246 (10th Dist.2000) the court explained:

> Because the line between willful or reckless misconduct, wanton misconduct, and ordinary negligence can be a fine one, "the issue of whether conduct was willful or wanton should be submitted to the jury for consideration in light of the surrounding circumstances when reasonable minds might differ as to the import of the evidence."

*Id.*, quoting *Brockman v. Bell*, 78 Ohio App.3d 508, 516, 605 N.E.2d 445 (1st Dist.1992).

{¶16} Here, appellees allege Cotner was speeding and failed to maintain an assured clear distance in violation of R.C. 4511.21.   They also allege Cotner violated R.C. 4511.041, which allows a police officer to speed when responding to an emergency, only if the officer uses emergency equipment such as lights and sirens.   Appellees submitted an authenticated expert report from an accident reconstructionist, Fredrick Lickert ("Lickert"), who concluded that Cotner was both speeding and failed to maintain an assured clear distance.   Lickert explained:

> Officer Cotner testified that he moved left in behind the SUV to pace the SUV, and he was maybe 3 car lengths behind the SUV.   A Crown Victoria cruise[r] is almost 18' long, so 3 lengths would be approximately 54'.   One of the first things a driver usually does when he or she spots a cruise[r] is to hit the breaks [sic], sometimes even when they are not speeding.   Traveling between 60 and 73 miles per hour and reacting to break [sic] lights in front

of his cruiser and using an average perception and reaction time of 1.5 seconds, Officer Cotner's cruise [sic] would travel between 131' to 160' before his cruiser breaks [sic] would begin to decelerate the car. Had the SUV break [sic] checked Officer Cotner, or slowed rapidly, his cruiser would have slammed the SUV in the rear end. By his own admissions, Officer Cotner stated he could not see in front of the SUV. So now he is tailgaiting and driving blindly behind the SUV. It is the opinion of this Examiner that for Officer Cotner to properly pace this alleged speeding SUV, Officer Cotner's cruiser should have been at a minimum 1.5 seconds, preferably 2 seconds behind the SUV. * * * It is the Examiner's opinion that if Mr. Cotner had been pacing this SUV, and he was pacing the vehicle blindly while traveling only 3 car lengths or approximately 54 feet behind the SUV, his conduct and operation of the cruiser was reckless.

{¶17} Viewing Lickert's report in a light most favorable to appellees, the non-moving parties, we find questions of fact remain as to whether Cotner was acting maliciously, wantonly, recklessly or in bad faith at the time of the accident.

{¶18} Accordingly, we overrule the sole assignment of error.

{¶19} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR