[Cite as *Zoldan v. Chaffee*, 2014-Ohio-5472.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STANLEY ZOLDAN, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2014-T-0002 |
| VILLAGE OF LORDSTOWN, | : | |
| Defendant, | : | |
| MICHAEL CHAFFEE, AN INDIVIDUAL, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CV 2610.

Judgment: Reversed and remanded.

*Martin S. Hume,* Martin S. Hume Co., L.P.A., 6 Federal Plaza Central, #905, Youngstown, OH 44503-1506 (For Plaintiff-Appellee).

*Matthew M. Ries,* Harrington, Hoppe & Mitchell, Ltd., 108 Main Avenue, S.W., Suite 500, Warren, OH 44481, and *Neil D. Schor,* Harrington, Hoppe & Mitchell, Ltd., 26 Market Street, #1200, Youngstown, OH 44503 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Michael Chaffee, appeals from the judgment of the Trumbull County Court of Common Pleas denying him immunity pursuant to R.C. Chapter 2744. At issue is whether the trial court erred in concluding that there was a genuine issue of material fact as to whether appellant was entitled to the general grant of immunity

afforded employees of political subdivisions. Because we hold appellant is entitled to immunity as a matter of law, the judgment of the trial court is reversed and remanded.

{¶2} In late summer of 2010, a proposal was advanced to install wind turbines to assist in the supply of electricity to the administrative building for the village of Lordstown. When the matter was put to a vote, three councilpersons were in favor the installation, and three councilpersons were against it. One of the three opposing the proposal was appellee, Stanley Zoldan. When council was unable to pass on the issue due to a tie, the mayor of the Village was required to cast a vote. Accordingly, appellant, the mayor at the time, voted for the installation of the turbines. The village filed for grants, which they received, and the construction of the turbines commenced.

{¶3} By March 2011, the wind turbines were operational. At a council meeting on April 4, 2011, however, council learned the turbines had not been given final building and electrical inspections. Appellee, concerned that someone in the public could be electrocuted, proposed that the turbines be shut down until the inspections occurred. On April 5, 2011, appellee spoke with Dale Grimm, the Parks and Grounds Superintendent for the Village, urging him to shut down the turbines. Mr. Grimm declined, stating he had to first speak with appellant, who was his boss. Mr. Grimm contacted appellant and related appellee's concerns. Appellant received information from the Trumbull County Building Inspector's Department that indicated the operation of the turbines did not create a safety issue. Accordingly, appellant told Mr. Grimm to keep the turbines operating but "get an electrical inspection ASAP."

{¶4} Once Grimm explained he would not shut down the turbines, appellee contacted the Trumbull County Building Inspector himself. According to appellee, the

2

building inspector explained that the reason why no inspection occurred is because no permit was obtained. And because no permit was obtained, no permit could be pulled. Appellee then advised the building inspector of his intention to shut the turbine down himself.

{¶5} Appellee subsequently traveled to the office of the Warren Tribune Chronicle where he informed a reporter, Raymond Smith, of his intentions. Mr. Smith drove with appellee to the site and, when they reached the village administrative building, appellee, posing for a photograph, shut down the turbine. Because the turbines functioned as a secondary source for the electricity in the administration building, however, electrical power to the building did not cease.

{¶6} The record indicates Mr. Grimm; the Village's Police Chief, Brent Milhoan; and the Village Fire Chief had actual authority to cut power to the turbines. Appellee acknowledged he was not given authority from one of these sources to shut the turbines down. Appellee maintained, however, he nevertheless possessed authority to shut the turbines down because he was a councilperson who took an oath to protect the citizens of the Village of Lordstown.

{¶7} Later, on April 5, 2011, appellant learned of appellee's actions, but was unsure how to handle the matter given the unusual circumstances. He first contacted Chief Milhoan to determine whether the officer could confirm that appellee had, in fact, shut the turbines down. He could not. Appellant, however, ultimately received a call from Mr. Smith, of the Tribune, seeking a comment regarding appellee's actions. Appellant, after receiving this confirmation, contacted the Village Solicitor, Paul Dutton, to brief him on the incident.

3

{¶8} On April 6, 2011, appellant contacted Chief Milhoan again and advised the chief he was waiting for Solicitor Dutton to provide him with a legal opinion regarding appellee's actions. Appellant maintained he did not specifically desire to file a criminal complaint, but felt it was necessary to seek legal advice to the extent Village property had been tampered with. Appellant further noted that, even though appellee was a member of council, he did not want to be perceived as giving him special treatment.

{¶9} After speaking with Chief Milhoan, appellant received an email from Mr. Dutton stating, inter alia, that the turbines "should not have been accepted for public use and made operational until such time as all final inspections (including electrical and foundation inspection) were completed and submitted in proper form to the village." Appellant maintained that Mr. Dutton also advised him verbally to pursue the incident with the police and file a police report. And, at 9:47 a.m., appellant contacted the police department and reported, by telephone, that, on April 5, 2011, the Village of Lordstown was a victim of the crime of Disrupting Public Services. Although appellee's name is not on the incident report, appellant did not contest that the report related to appellee's act of shutting down the turbines.

{¶10} Later, on April 6, 2011, appellee was asked to come into the police department. He gave police a voluntary statement in which he admitted to his actions. He further stated he shut the turbines down based upon his concern that, if they were to malfunction, the building could catch fire and/or firefighters or the public at large could be injured. And, if any injury were sustained as a result of the malfunction, the village could be held both civilly and criminally liable.

4

{¶11} Appellant also provided a voluntary statement to police on April 6, 2011. In his statement, he recited the chain of events, as he was apprized of them. He noted he had spoken with Chief Milhoan earlier in the day as well as Solicitor Dutton. The former advising him he should make a written statement, the latter informing him he should pursue the matter further with police.

{¶12} Subsequently, Chief Milhoan contacted the City of Newton Falls Prosecutor's Office to determine whether the police department should take any action on the matter. Chief Milhoan explained the Village had no recommendation as to whether criminal charges should be pursued. On April 8, 2011, appellee was charged by complaint in the Newton Falls Municipal Court with Disruption of Public Services, in violation of R.C. 2909.04(A)(2), a felony of the fourth degree. The formal complaint was signed by "Captain Campbell for Ron Reed." Deputy Ron Reed, of the Village of Lordstown Police Department, was the officer investigating the incident prior to the filing of the complaint. Appellee was arrested and transported to the Trumbull County Jail.

{¶13} The criminal proceedings were ultimately transferred to Niles Municipal Court. Terry Swauger, the prosecutor who was handling the matter in Niles, stated no one from the Village of Lordstown, including appellant, had given him any input regarding the management of appellee's case. On January 13, 2012, the charge was dismissed in exchange for appellee's agreement to pay court costs.

{¶14} On November 19, 2012, appellee filed a complaint against the Village of Lordstown and appellant. The complaint alleged malicious prosecution, abuse of process, defamation, and intentional infliction of emotional distress. The Village and appellee subsequently filed a motion for summary judgment asserting they were entitled

5

to immunity under R.C. Chapter 2744. They further asserted appellee's defamation and intentional infliction of emotional distress claims were time-barred by the applicable statute of limitations. Appellee filed a memorandum in opposition, arguing genuine issues of material fact remained to be litigated as to whether appellant was entitled to sovereign immunity based upon statutory exceptions to the general grant of immunity.

{¶15} On January 10, 2014, the trial court issued an order granting summary judgment on the defamation and intentional-infliction claims ruling they were time-barred. The court also granted the village of Lordstown summary judgment on appellee's malicious prosecution and abuse of process claims, finding no exception to general immunity. The trial court, however, denied appellee summary judgment on the malicious prosecution and abuse of process claims. The court determined there were genuine issues of material fact on these claims precluding summary judgment.

{¶16} Appellant appealed the trial court's judgment and appellee filed a cross-appeal. Subsequent to briefing, however, this court dismissed appellee's cross-appeal. This court held appellee was attempting to appeal the award of summary judgment in the Village's favor, which is not a final appealable order because the claims against appellee are still pending and the appealed judgment did not contain the requisite Civ.R. 54(B) language. *See Zoldan v. Village of Lordstown*, 11th Dist. Trumbull No. 2014-T-0002, 2014-Ohio-3007, ¶10.

{¶17} Appellant assigns one error for this court's review. It asserts:

{¶18} "The trial court erred in denying summary judgment on appellee's malicious prosecution and abuse of process claims against Mayor Chaffee because Mayor Chaffee is entitled to immunity under R.C. 2744.03."

6

**{¶19}** Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated; (2) "the moving party is entitled to judgment as a matter of law;" and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶27.

**{¶20}** Political subdivisions are generally immune from civil liability. R.C. 2744.02(A). An employee of a political subdivision, while also entitled to a general grant of immunity, may be held civilly liable if one of the circumstances outlined in R.C. 2744.03(A)(6) applies. In this matter, it is undisputed that appellant, as a former mayor of the Village, is an employee of a political subdivision.

**{¶21}** Under R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability *unless*: (1) the employee's acts or omissions are manifestly outside the scope of the employee's employment or official responsibilities; (2) the employee's acts or omissions were malicious, in bad faith, or wanton or reckless; or (3) liability is expressly imposed on the employee by a section of the Revised Code.

7

**{¶22}** Appellee does not allege Ohio law expressly imposes liability on appellant for his actions. Instead, he alleged appellant's acts or omissions were manifestly outside the scope of his employment or official responsibilities as well as that appellant's conduct in managing the incident was malicious, in bad faith, or wanton and reckless pursuant to R.C. 2744.03(A)(6)(b).

**{¶23}** Malicious conduct is "the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Pierce v. Woyma*, 8th Dist. Cuyahoga No. 97545, 2012-Ohio-3947, ¶15, citing *Hicks v. Leffler*, 119 Ohio App.3d 424, 428-429 (10th Dist.1997). Further, "bad faith" is understood as more than bad judgment or negligence. *Pierce*, *supra*, citing *Hicks.* Bad faith can also be understood as that for which there is no "reasonable justification." *Id.* at 429, citing *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 554 (1994).

**{¶24}** "Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Universal Concrete Pipe Co. v. Bassett*, 130 Ohio St. 567 (1936), paragraph two of the syllabus.

**{¶25}** "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson [v. McNeill]*, 53 Ohio St.3d 102, [] 104-105, [(1990)], adopting 2 Restatement of the Law 2d, Torts, at 587 (1965); *see also* Black's Law Dictionary 1298-1299 (8th Ed.2004)

8

(explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm)." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶34.

{¶26} In his deposition, appellee asserted appellant initiated the criminal proceedings against him in retaliation for contesting the turbine project. He stated his belief that "somewhere along the line, the mayor did come up with, 'Here, I will file charges, file a complaint, take it from here." Appellee asserted: "[i]t was a punishment. It was a punishment because I raised hell about those windmills. I was right." Appellee conceded, however, his viewpoints were based upon personal speculation.

{¶27} First of all, it is unclear how appellee's opposition to the turbine installation had any necessary bearing on appellant's conduct subsequent to the incident. The project properly passed through council; the turbines were erected; and the record fails to establish that there was any meaningful or overt tension between the parties in the interim. If anything, appellee's admittedly strident opposition to the project supports a conclusion opposite of the theory advanced in his deposition; namely, that his unilateral act of shutting down the turbines was a form of protest for appellant, and other councilpeople, not voting against the project.

{¶28} This observation aside, appellee's beliefs and speculations are the only evidence that appellant was acting maliciously, in bad faith, or in a wanton and reckless fashion. A party contesting a motion for summary judgment must set forth specific *facts* showing there are genuine issues for trial. *See* Civ.R. 56(E). Because appellee's theory of liability as well as his argument that appellant is not immune from such liability

9

is premised upon unconfirmed speculation, it does not meet the requirements of Civ.R. 56. Accordingly, appellee has failed to meet his reciprocal burden of establishing a genuine issue of fact on the immunity issue. Thus, appellant was entitled to immunity as a matter of law. *Werman v. Green*, 11th Dist. Lake No. 2000-L-033, 2001 Ohio App. LEXIS 1555, *7 (Mar. 30, 2001) (claim based upon hunches or speculation does not create a genuine issue for trial and must fail as a matter of law); *Hansen v. Wal-Mart Stores, Inc.*, 4th Dist. Ross No. 07CA2990, 2008-Ohio-2477, ¶8 ("Mere speculation and unsupported conclusory assertions are not sufficient."); *Carroll v. Alliant Techsystems, Inc.*, 10th Dist. Franklin No. 06AP-519, 2006-Ohio-5521, ¶17 ("Speculation and conjecture * * * are not sufficient to overcome appellant's burden of offering specific facts showing that there is a genuine issue for trial."). Viewing the record in a light most favorable to appellee, we conclude his beliefs, which he conceded were speculative and unsupported by any independent corroborative facts, are insufficient to create a genuine issue of material fact as to whether appellant is excepted from immunity under R.C. 2744.03(A)(3).

{¶29} Furthermore, absent appellant's speculation, there are no facts indicating appellant acted maliciously, in bad faith, or in a wanton and reckless manner. The evidence indicates appellant called Chief Milhoan about the incident the day it occurred. According to Chief Milhoan, appellant did not indicate an interest in pursuing charges, but simply explained he had consulted with Solicitor Dutton for legal advice. Chief Milhoan stated appellant did not ask him to take any specific action. In light of the report, however, Chief Milhoan, on his own, called the prosecutor. They discussed the incident, but nothing more occurred. The evidence further indicates that on April 6,

10

2011, appellant telephoned the police department as a complainant on behalf of the Village for the crime of disruption of public services. In his deposition, appellant stated, Solicitor Dutton had advised him to file a report with the police. He further testified that where Village property is tampered with, he would always seek legal advice from the solicitor. He stated he did not want to file a criminal complaint; under the circumstances, however, he did not want it to appear he was treating a Village Councilperson any differently than an ordinary citizen.

{¶30} The foregoing facts simply indicate appellant facilitated an investigation into the incident in his capacity as mayor. Conduct that, under the circumstances, was within the scope of his employment and official responsibility. Further, the facts fail to establish appellant's actions were initiated to willfully harm appellee through conduct that was unlawful or without basis. Rather, appellant's actions had an objectively reasonable justification; namely, because Village property was tampered with and done so with publicity, appellant determined a public investigation of the actions would be an appropriate means of addressing the situation. The facts therefore fail to create a genuine issue of material fact on the possibility appellant was acting maliciously or in bad faith.

{¶31} Furthermore, there is no suggestion that appellant's conduct manifested a "disposition to perversity" or a conscious indifference to an obvious risk of harm to appellee that was unreasonable under the circumstances. Appellant reported what he perceived to be a criminal act and appellee admitted to committing the act; appellant subsequently pursued the investigation because he wanted to avoid the perception that an elected official would be treated differently than an average citizen who acted in a

11

similar fashion. Accordingly, there is nothing in the record, save appellee's uncorroborated speculation, to indicate appellant had a motivation to punish or injure appellee. Hence, there is no basis to conclude appellant was wanton or reckless in taking the course of action he chose.

{¶32} Given the foregoing, we therefore hold, viewing the facts in a light most favorable to appellee, that appellee has failed to establish a genuine issue of material fact on the issue of appellant's immunity under R.C. 2744.03(A)(6)(a) and (b).

{¶33} Appellant's assignment of error is sustained.

{¶34} For the reasons discussed in this opinion, the judgment of the Trumbull County Court of Common Pleas is reversed and remanded.


THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

12